Daniel, J.
 

 The lessors of the plaintiff claimed all
 

 the land, contained within the boundaries of a grant made in the year 1760, to James Pace, lying' on the east side of Drowning creek, beginning about a mile above Overstreet’s bridge at a red oak, thence 87 E. 179 poles to a pine, then S.
 
 3
 
 W. 17.9 poles to. a pine ; thence N. 87 W. 179 poles to a hickory ; thence the courses of the swamp to the beginning. The distance mentioned iij the third line gave out nine chains and fifty links from the swamp ; there was no hickory corner to be found, nor any proof of its existence. The Judge charged the jury, that the call of the fourth line of the grant from the hickory,. “
 
 thence the courses of the Swamp to the
 
 beginning,” entitled them to extend the third line to the swamp, (a natural boundary,) and thence along the swamp to the beginning
 
 red oak.
 
 This part of the charge we think was correct. In
 
 Ben
 
 &c.
 
 Sandifer
 
 v.
 
 Foster,
 
 2 Hay. Rep. 247, the call of the last line was, “ thence along the river to- the beginning the
 
 river
 
 was held to-be the boundary, although the line coming towards the river called for a
 
 white oak
 
 at its termination; which was half a mile distant from the river.
 
 Hartsfield
 
 v,
 
 Westbrook,.
 
 1 Play. 258,
 
 Pender
 
 v.
 
 Coor,
 
 2 Hay. 183.
 

 2dly. The Judge charged that the declaration of Daniel McPhaul, that his fourth or west line ran from the-termination of the distance mentioned in the third line, to-the beginning red oak, did not divest him of his title to-the land, lying'between that line and the swamp, in the
 
 *174
 
 absence of any conveyance from him, or adverse possession, held under such circumstances as would give a title to the possessor. Wo see no error in this part of the charge. If the land in dispute belonged to Daniel MePhaul, he could not part with the title to it by parol. Nor was his admission binding on him and those who claim under him, if they were made under ignorance or a clear mistake of his rights.
 

 3dly. Neil MePhaul, in the year 1772, purchased the land mentioned in the aforesaid patent of Richard Smith. Neil MePhaul died about the close of the Revolutionary War, and before the year 1784, leaving Daniel MePhaul his eldest son and heir at law. The heir entered on the land, shortly after the death of his father, and continued to reside on it from that time to the- commencement of this suit. Neil MePhaul was a Tory, and died a captain in the service of the British Government. The County Court of Bladen, at its August sessions, 1782, entered a judgment of confiscation of the estate of Neil MePhaul, as is mentioned in the case. The Legislature had, by the confiscation acts, declared that the lands of all such persons, as adhered to and aided the enemy, by taking up arms in their favor, should be forfeited. Commissioners of confiscation were directed to be appointed in each county, who were to give bond and take an oath faithfully to perform their duties. - The duties of these Commissioners, was to take possession of lands and moveable property, in the name, and for the use of the State, which, by the Act of Assembly, were declared to be forfeited to the State
 
 ;
 
 and to sell the same, and make titles to the purhasers, and account for the purchase money. The Act of 1780, eh. 170,
 
 (Rev. Code,)
 
 enacts, that for want of Commissioners of forfeited estates in each county, the Sheriff or Coroner, and where there is no Sheriff or Coroner, the County Court is hereby strictly enjoined to seize and take into their possession, all such property as has been described in the said Act.
 

 
 *175
 
 If the Court was authorized to act in the place of Commissioners, and if the order could be construed to
 
 include
 
 this piece of land, it condemned the land to confiscation, without any notice to the heir to defend, which was contrary to law. And, moreover, the land was never seized to the use of the State, by any officer or person, but remained in the actual adverse possession of the heir for more than sixty years before this controversy arose. We think, that the title of Daniel McPhaul never was divested, by any office found in the mode pointed out by any of the confiscation Acts. The judgment is affirmed.
 

 Pur Curiam, ' Judgment affirmed,