## PEEBLES v. GRAHAM.

(Filed May 7, 1901.)

1. BOUNDARIES—*Quantity—Devise—Description.*

   · Where the location or boundary of land is doubtful, quantity becomes important.

2. BOUNDARIES—*Description—Designation—General Designation —Devises—Evidence.*

   If one description in a devise designates land with certainty, evidence is admissible to show that a general designation of the land is an inadvertence and should be disregarded.

ACTION by R. B. Peebles, as trustee, and A. R. Peebles, against John W. Graham, as trustee, and Geo. M. Graham, heard by Judge *Fred. Moore* and a jury, at March Term, 1900, of the Superior Court of DURHAM County. From a judgment for the defendant on a cross action, the plaintiff appealed.

*Winston & Fuller, Shepherd & Shepherd,* and *R. B. Peebles,* for the plaintiff.

*Manning & Foushee,* and *Graham & Graham,* for the defendants.

FURCHES, C. J. This is an action of ejectment. A part of the lands involved in this appeal were not embraced in the plaintiff's complaint, but were brought into the controversy by the defendant's answer, in the nature of a cross action.

The contentions of the parties grow out of the devises in the will of Paul C. Cameron, and are the same sections that were set out in the defendant's appeal. But for convenience, and to prevent the necessity of referring to the other opinion, we quote them again:

The devise to the plaintiff is contained in the eleventh item, and is as follows: "I also give, devise and bequeath to R. B. Peebles, as trustee aforesaid, all the lands included under the name of the Arnold, the Geer, and the Jones land—all east of the Raleigh and Roxboro road and south of Neuse River in Durham County, and the title papers all with my sister Margaret's papers in the Citizens Bank at Raleigh."

That under which the defendant claims is included in item 9, and is as follows:  "I also give and devise to John W. Graham, as trustee aforesaid, for his son George M. Graham, all the lands known and called as the 'Leathers,' 'Briggs,' 'Reavis' and 'Southerland,' on the south side of Eno, and on the Raleigh and Roxboro and the Hillsboro and Fish Dam roads, and all now in Durham County, and all title deeds registered in Orange, and containing between 1,500 and 1,700 acres—to George and his heirs an inheritance in fee simple when he comes of age."

While this is an action of ejectment, the land involved in this appeal was not included in the plaintiff's complaint, but brought in by the defendant's answer in the nature of a cross action, in which the defendant asks affirmative relief.   Therefore, while the principle is preserved, the general rule is reversed, and the burden is thrown on the defendant to show title in himself, and it was so stated in the charge of the Court.   The controversy is as to the 203 acres, the 547¾ acres and the 80 acres (as will be seen by the map which will be published.)

The plaintiff claims that it appears from the map that the 80-acre tract and the 203-acre tract were Arnold lands, that is, that they had at one time belonged to people by the name of Arnold, and he says that being so, he has offered evidence tending to show that the 547¾-acre tract was used in connectin with these tracts, and that they are all known and called the Arnold lands, and that he is entitled to them under the name of Arnold lands.   And he says they were never owned

by any one named Southerland, nor were they ever called by that name; while it appears by the map that the testator owned a tract of 51 acres at the southwest corner of the map, adjoining the Reavis tract, that was known as Southerland land. The defendant denies that the testator ever owned the 51 acres, called on the map Southerland lands; that the testator's father, Duncan Cameron, did own this small tract of land at one time, but that he sold it before his death, and that the testator, Paul Cameron, never owned it. And the defendant offered evidence tending to sustain this contention—that the testator Paul never owned this 51-acre tract. The defendant also denies that the 80-acre tract, the 203-acre tract, or the 547¾-acre tract was ever called or known as the Arnold lands. He says that all these lands at one time belonged to the Alstons, and was sold off by them at different times and to different persons, and, in that way, some of them acquired different names. But that the 547¾-acre tract was conveyed directly from the Alstons to the Camerons, and never acquired any other name than the Alston lands. The defendant contends that the word "Southerland" was a slip— an inadvertence; but however made, the defendant contends it should be rejected as a description of any lands devised by the testator.

And the defendant contends that this being done, there is still sufficient description left to identify this land as a part of the devise to the defendant; that it will stand with this description—that it is on "the south side of Eno River," and "on the Raleigh and Roxboro road," "the title deeds registered in Orange County," and with the Reavis and Briggs land which are on the Fish Dam road, and the Leathers land on the Raleigh and Roxboro road, making in all about 1,640 acres—while the other tracts conceded by the plaintiff to have passed by the will only contain a little over 800 acres.

The plaintiff contends that the word "Southerland" was

not put in the will by inadvertence or mistake; that there is no evidence that it was, and there is no reason for rejecting it. He further contends that if it were rejected—considered as not in the will—there is not sufficient description left to identify the 203 acres, nor the 547¾ acres, nor the 80 acres, as a part of the land devised to the defendant.

It is a presumption of fact that every man that makes a will intends to dispose of all of his estate. *Blue v. Ritter,* 118 N. C., 580; *Jones v. Perry,* 38 N. C., 200. This presumption may be rebutted, but it stands until it is rebutted. It is therefore presumed that Mr. Cameron did not intend to die intestate as to this large body of land, amounting to some 800 acres. And besides this presumption the law makes, we have other evidence in the will tending to show that he did not intend to die intestate as to any part of his estate. We find that in the sixteenth item of his will he says: "And to provide for any omissions I name my daughter Mildred the residuary legatee," but she is to have her full share and not to account for anything she may receive under this residuary clause. And we can hardly think that he *omitted* to dispose of so large a body of land as this, when it is admitted that he disposed of all his lands adjoining it. He must have intended to give it to some one, and if he did, it was either the plaintiff or the defendant.

It lies on the "south side" of the Eno River, which is one of the descriptions. It is true that all of it is not directly south of the Eno—taking the meridian. But it is on the "south side" of the Eno. It is on the Raleigh and Roxboro road, which is another part of the description. It is all in Durham County, and the title deeds are registered in Orange County. This is so as to the 203 acres and the 547¾ acres. The land devised contains "about 1,500 or 1,700 acres," and if the 203 acres, the 547¾ acres, in which the 80 acres are

included, this is so; but to exclude them, the devise only contains a little more than 850 acres.

Suppose the will had said, I devise to the defendant the Briggs tract, the Reavis tract, the Leathers tract, and the land on the south side of the Eno, and on the Raleigh and Roxboro road, lying in Durham County, the title deeds all registered in Orange County, making in all 1,500 or 1,700 acres; and we find the Briggs land, and the Reavis land, and the Leathers land as described, and we find the 203-acre tract, the 547¾-acre tract, including the 80-acre tract, belonging to the testator, lying on the south side of the Eno, on the Raleigh and Roxboro road in Durham County, the title deeds registered in Orange County, and adjoining the other land admitted to be devised to the defendant, making in all about 1,600 or 1,700 acres, the amount specified, and not disposed of unless it be to the defendant; and without these three last-named tracts the devise only covered about 800 acres—could it be said there was no description in the will tending to identify this land as a part of the devise?

Of course, if the testator owned land on the Raleigh and Roxboro road known or called by the name of the Southerland land, it would be presumed that the word "Southerland" was intended to identify that land, and it could not be considered an error in the testator. And the word "Southerland" would have to be made to apply to that land. But this question was specifically submitted to the jury in the charge of the Judge, in the following instructions: "Understand, gentlemen, in the first place, if you find that the testator owned Southerland land, then only Southerland land can pass under this description, and land known by the name of Alston land can not pass; but if you find that he did not, then Southerland is a misdescription, and then you should proceed to inquire whether, in the first place, this land was devised to any one else or not." And as the jury found for the de-

fendant, they must necessarily have found that the testator owned no land known or called Southerland land. And this being so, the word "Southerland" in the devise was meaningless, and must be rejected in construing the will. The jury have also found that these tracts are not a part of the Arnold tract, willed to the plaintiff, as this question was submitted to them and they found against the plaintiff's claim.

In *Procter v. Pope,* 15 N. C., 371, it is said that if one description in a *deed* sufficiently points out the thing with certainty, a false description may be rejected.

In *Simpson v. King,* 36 N. C., 13, it is said: "An incorrect and unnecessary part of the description must be disregarded, rather than the whole disposition should fail; provided that the thing claimed be found to agree with those parts of the description that are retained."

In *Scull v. Pruden,* 93 N. C., 173, it is said: "Where the subject-matter of a conveyance is completely identified by its location and by certain other marks of description, the addition of another particular which does not apply to it will be rejected, as having been inserted through misapprehension or inadvertence."

In *Mayo v. Blount,* 23 N. C., 283, it is held that "A perfect description, which fully ascertains the *corpus,* is not to be defeated by the addition of further and false description."

The general rule is that the quantity of land stated to be conveyed will not be considered in determining location or boundaries. But there is a well-known exception to this rule that is as firmly established as the rule itself. And that is this: Where the location or boundary is doubtful, quantity becomes important. *Brown v. House,* 116 N. C., 866; *Cox v. Cox,* 91 N. C., 356.

The rule of construction is to adopt that one which will give validity to the instrument, if sufficient appears upon the in-

strument to enable the Court to do so. *Shaffer v. Hahn,* 111 N. C., 1; *Pool v. Procter, supra.*

We do not think the authorities cited by plaintiff are in conflict with the views we have expressed in this opinion, or the authorities we have cited. Nor do we think the exceptions of the plaintiff can be sustained. And we are of the opinion that there was evidence sufficient to submit the question to the jury, as to whether the testator owned any land known or called by the name of "Southerland," and as the jury have found that he did not, we are of the opinion that the word "Southerland" in the devise to the defendant should be rejected as an inadvertence, and meaningless; that the word "Southerland" being rejected, we are of the opinion that there was sufficient other evidence to authorize the Court to submit the question to the jury. And as they have decided it in favor of the defendant, their finding and the verdict must stand.

No error.

CLARK, J., did not sit on the hearing of this appeal.