### ROWE v. CAPE FEAR LUMBER CO.

(Filed November 17, 1903.)

1. BOUNDARIES—*Deeds—Swamps.*

Where a deed calls for a swamp and thence with the run of said swamp, the first call must go to the *run* of the swamp and not terminate at the edge of the same.

2. BOUNDARIES—*Deeds—Swamps—Questions for Jury.*

Where a deed calls for the mouth of a stream emptying into a swamp, the location thereof should be left to the jury.

3. BOUNDARIES—*Deeds—Swamps—Questions for Jury.*

Where the calls in a deed are ambiguous or uncertain, it is a question for the jury to decide what was meant.

4. BOUNDARIES—*Deeds—Questions for Jury.*

Where a call in a deed terminates at a swamp, the question whether the edge or run of the swamp is meant is for the jury.

5. PARTIES—*Abatement—Executors and Administrators.*

In an action for trespass by two plaintiffs, in which one died pending the action, his devisee cannot be made a party and recover in his stead, but his administrator must be joined.

6. ABATEMENT — *Dismissal — Executors and Administrators — The Code, sec. 188—Acts 18 87, ch. 389.*

A motion to dismiss an action for trespass for failure to make an administrator a party thereto cannot be made in the supreme court.

7. ISSUES—*New Trial.*

Where an issue is general, embracing within its scope several distinct tracts of land, a new trial thereon must be general.

ACTION by J. W. Rowe and M. V. Dosh against the Cape Fear Lumber Company, heard by Judge *R. B. Peebles* and a jury, at March Term, 1903, of the Superior Court of PENDER.

133——28

County.   From a judgment for the plaintiffs the defendant appealed.

*Stevens, Beasley & Weeks,* for the plaintiffs.
*Rountree & Carr,* for the defendant.

WALKER, J.   This is an action brought by the plaintiff to recover damages for a trespass alleged to have been committed by the defendant in cutting timber in Catskin Swamp.   The liability of the defendant depends upon whether the boundaries described in the grants and mesne conveyances, under which it claims the disputed land, stop at the edge or margin of the swamp or extend to its run.   Plaintiffs introduced in evidence a grant from the State, dated December 20, 1893, to the plaintiff John W. Rowe, and a deed from the latter to his co-plaintiff L. P. Dosh for an undivided one-half interest in the land granted.   It was admitted that the grant and deed covered the *locus in quo.*

The defendant introduced grants and mesne conveyances by which it claimed to have acquired the title of three tracts of land, one on the north side of Catskin Swamp, known as the "Casteen tract," and two tracts on the south side of the swamp, known as the "Watkins sixty-four-acre tract" and the "Watkins fifty-acre tract."

The case was tried in the Court below at December Term, 1900, and a verdict and judgment were rendered in favor of the defendant.   The plaintiff appealed to this Court, where a new trial was awarded at February Term, 1901 (128 N. C., 301).   The defendant filed a petition to rehear the case so far as the judgment affected the boundaries of the Casteen tract, and the petition was allowed.   (129 N. C., 97.) The case was again tried in the Court below at March Term, 1903, and is now before us upon an appeal by the defendant from a judgment entered upon a verdict in favor of the plaintiff.   Two

preliminary questions were presented in the lower Court and argued before us upon exceptions taken to the rulings thereon. They relate to the effect of the death of L. P. Dosh and to the decision of this Court when the case was reheard upon the plaintiff's right to recover, and will be passed upon after we have considered and decided the other questions raised in the appeal.

It will be convenient to take up and discuss separately the exceptions of the defendant applicable to each tract of land in the order in which the several tracts are mentioned in the case, that is, the "Casteen tract," the "Watkins sixty-four-acre tract" and the "Watkins fifty-acre tract," as there is some difference in the facts and principles relating to each of them.

At the last trial the defendant introduced in evidence a grant from the State to Daniel Atkinson, dated in 1840, and several mesne conveyances which it alleged connected the deed under which it claimed with said grant. Among these conveyances was a deed from Alexander Casteen to Ezekiel Chadwick, dated in 1859, which describes the land as follows: "Beginning at a yellow pine at the edge of said swamp, runs thence north four degrees, west 127 poles to a stake at the edge of the bay; thence with said bay to the head of Bear Branch; thence with Bear Branch to Catskin Swamp; thence with the run of said swamp down to the first station." After introducing this deed the defendant tendered witnesses for the purpose of proving adverse possession of the land under it continuously for twenty-one years. The evidence was excluded by the Court, upon the ground, as stated at the time, that the Casteen deed did not cover the land alleged to have been trespassed upon. The Court made this ruling because it was of the opinion that the calls of the deed stopped at the margin of the swamp and did not extend to the run. In this ruling of the Court we think there was error.

When this case was before the Court upon the rehearing
it was held that the fourth or last call of the deed from Cas-
teen to Chadwick so controlled the third call as to require
that the latter should be extended to the run of Catskin
Swamp. The Court further held that with this construction of
the deed, and in view of the evidence and the probable find-
ing of the jury, the plaintiff "must fail as to the tract north
of the run," that is, the Casteen tract. We do not see why
this was not a most explicit declaration of the Court as to the
correct location of the boundaries of the deed, and this decis-
ion, we think, should have been recognized and followed by
the learned Judge who presided at the trial. Not only was it
so decided by this Court in this case, which makes it *res judi-
cata* as to the parties to this litigation, but the decision is
clearly in accordance with the law as previously laid down by
this Court. Indeed the principle which governs in ascertain-
ing the location of this particular call may now be considered
as well established, if not elementary, in the law of boundary.
A natural object or boundary called for in a deed, such as a
river, creek or the run of a swamp, will control course and
distance, and the line must terminate at it, however wide it
may be of the course and distance specified. *Cherry v. Slade,*
7 N. C., 82. In this deed the third call is not for the run
of the swamp, but for "Catskin Swamp," but the next and last
call requires the last line to be co-terminus "with the run of
the swamp," and it will be impossible to give effect to this
call if the third line will not reach the run, unless that line
is extended or a new and direct line is adopted so as to reach
the run. It is just a simple application, as it seems to us, of
the rule that the natural boundary must control and that a
call which is less certain must yield to one which is more
certain. *Campbell v. Branch,* 49 N. C., 313. It has re-
peatedly been held by this Court that where a natural bound-
ary is called for, either expressly or by necessary implication,

as in this case, and the call stops short of it, the natural boundary should be reached by extending the line according to the course, if that can be done, and, if not, then by the most direct line to the nearest point on the natural boundary, disregarding, if necessary, the course and distance. *Heartsfield v. Westbrook,* 2 N. C., 258; *Sandifer v. Foster, Ibid.,* 237; *Cherry v. Slade, supra; Haughton v. Rascoe,* 10 N. C., 21; *McPhaul v. Gilchrist,* 29 N. C., 169; *Hays v. Askew,* 53 N. C., 226; *Literary Fund v. Clark,* 31 N. C., 58; *Campbell v. Branch, supra.* Where one of the calls is for an established line or natural boundary, and the next call is not to, but with, another established line or natural boundary, the latter must be reached by a direct line from the object at the end of the preceding call. Such were the calls in *Sandifer v. Foster, supra,* and in *Haughton v. Rascoe, supra.* In the former the call in dispute was for a white oak, thence along the river to the beginning; and in the latter the disputed call was for the Roanoke river, and then along the thoroughfare to the first station. In former case the Court held that a direct line must be run from the white oak to the river; and in the latter that a similar line must be run from the river to the thoroughfare. This is the principle governing in all such cases, always, of course, subordinating calls by course and distance to those by marked lines and natural boundaries, as the latter establish a more certain and reliable description. Where there is a call for course and distance, and the next call is not to, but with, a natural boundary, which the course of the preceding call does not lead to, the course and distance are disregarded and the line is extended directly to the natural boundary, as pointed out by *Battle, J.,* in *Campbell v. Branch, supra,* when correcting an inadvertence of the Court in *Literary Fund v. Clark, supra.*

Applying these principles to the facts of our case, we hold as a matter of law that the third line of the Casteen deed

should be run down Bear Branch to Catskin Swamp, which is
a natural boundary, and then, if the run has not already been
reached by a direct line to it *usque ad filum aquae,* and
thence, according to the next call, with the run of the swamp.
If the last call does not reach the first station, by following
the run of the swamp, it must stop in the middle of the run
at a point opposite the first station, and then a direct line must
be run from that point to the beginning, which we think is in
accordance with the decision in *Hays v. Askew, supra,* and
the calls of this tract must be closed as we have indicated.

*Watkins sixty-four-acre tract:* This tract is described in
the deed of Stephen Keys to O. F. Watkins, dated in 1868,
as follows: "Beginning on Mulbery or Middle Branch, Benja-
min Watkins' corner; thence north 59 east 3 rods to a pine;
thence north 15 east 50 poles to a stake; thence north 10 west
108 poles to a stake; thence north 78 west 27 poles to a cypress
at the edge of Merick's Creek; thence down said creek to the
mouth of said branch; thence up the run of said branch to the
first station, containing, by estimation, 50 acres more or less."
The next preceding deed in the defendant's chain of title has
the same description, except that it calls for a cypress at the
edge of Catskin Creek instead of Merick's Creek, but there
was evidence introduced by the defendant to the effect that the
two names described one and the same ceek. There was also
evidence tending to show that Catskin Creek "meant the whole
run and all the creek and lowland"; in other words, that
Catskin Creek was identical with Catskin Swamp. We think,
therefore, and so hold, that the defendant's deed should have
been admitted, so that the jury could have determined upon
the evidence offered by the respective parties, and under the
instructions of the Court, as to what was in fact meant by the
call for Catskin Creek or Merick's Creek. If the parties
intended to call for the run of the creek, then the defendant's
deeds cover the *locus in quo;* but if they intended to call for

the margin of the swamp, they do not. The Court, therefore, erred in excluding the defendant's deeds and in the instructions given to the jury on this part of the case.

The Court seems to have excluded these deeds upon the supposition that this Court had ruled at the former hearing of the case that when Catskin Swamp was called for it meant the edge of the swamp, and that the line should stop there. We do not so understand the former ruling. It is true that *Furches, C. J.,* in *Rowe v. Lumber Co.,* 128 N. C., 301, said that certain authorities cited by him tended to sustain the view "that a call to a swamp, and along a swamp, only goes to the swamp," but by reference to other parts of the opinion, especially at page 302, it will be seen that he was referring to a call for an object on the margin of the swamp, and not to a call for the swamp generally, for he says: "But the calls on the other two tracts on the east side are to points on the margin or banks of the swamp, and thence with the swamp." We cannot think that the learned Chief Justice intended to repudiate the principle laid down in *Brooks v. Britt,* 15 N. C., 481, that where there is a call for a swamp it is for the jury to say whether the margin or the run is intended, for he cited that case as one of the authorities in support of what he had said at page 304. The last expression of the opinion must be qualified and restricted by the particular facts of the case to which it referred.

We still adhere to the doctrine so well stated by *Gaston, J.,* in *Brooks v. Britt, supra,* that where a swamp is called for, whether the run in the boggy and sunken land, or the margin of such boggy and sunken land, is the call of the grant, depends "upon facts fit to be proved and proper to be passed upon by the jury"; so that in this case where there is such a call it must be governed by that principle, and likewise, where there is a call for Catskin or Catskin Swamp or Catskin Creek, whether the call refers to the run or the boggy or sunken land,

it must, under the same authority, depend upon facts "fit to be proved" and proper to be considered by the jury. This ruling will apply to all deeds not calling for the run in such manner as to leave no doubt that it was intended as one of the lines of the tract.

*Walkins fifty-acre tract:* The calls of the deed for this land are as follows: "Lying on the south side of Catskin Swamp, containing 100 poles square, containing fifty acres, be the same more or less, lying and being on Catskin, beginning in the mouth of Blank's Bridge Branch, thence along said branch to Elsie Alexander's line; thence along said line to the Old Field Branch; thence said branch to Catskin; thence up the meanders of Catskin to the first station, with all woods, waters and every other appurtenances thereunto belonging." The question raised in regard to this tract is as to its proper location, and this depends largely upon the determination of its first or beginning corner. If that is once fixed it will not perhaps be difficult to ascertain its true boundaries. It begins at the mouth of the Blank's Bridge Branch, which flows into Catskin. The defendant contends that the mouth of the branch is at the run of the swamp, and the word "Catskin," as used in the clause, refers to the run; but, in view of the evidence in this case, we cannot decide as matter of law whether the contention of the defendant is right or not. The mouth of a stream is defined to be that part of it where its waters are discharged into another body of water. It cannot mean the place where the low-land of the branch meets the low-land of Catskin Swamp, as contended by the plaintiff. It must mean the place where the branch flows into some other body of water and loses its identity as a distinct stream, or where it ceases to have a channel of its own. If that point is at its confluence with the run of Catskin, then that is its mouth and the first corner of the tract; but if it is at the edge of the swamp, or at any other place in the swamp, then the latter

place is its mouth and the point of beginning. If the map was the only evidence in the case relating to this question we would say that the mouth of the branch is at the point desig-- nated on the map as "18," and that is where the branch joins the run, as it appears from the map that the branch empties into the run. But there is some evidence tending to show that Catskin Swamp is low and flat and that the branch "spreads out" at or near the edge of the swamp, where its waters mingle with those of the swamp, so that it cannot be identified as a separate stream, and that the run or channel of the swamp is some distance from the place where the branch empties into the waters of the swamp. It should therefore have been left with the jury to find, under proper instructions of the Court, where the mouth of this branch is, with directions that the place at which they find the mouth to be should be considered as the first corner in locating the boundaries of the tract. There seems to be no dispute as to the first two calls of the deed for this tract, but the plaintiff contends that the third call, which is "thence said (Old Field) branch to Catskin," should stop at the edge of the swamp, or, at least, that the matter should be left to the jury so that they can determine what is meant by "Catskin"—that is, whether the edge or the run of the swamp was intended. The defendant insists that the call should go to the run, but if as matter of law the run is not called for, then the jury should decide as matter of fact where the end of this line should be. We cannot say that either the edge of the swamp or the run is the objective point, but it must be submitted to the jury to ascertain, upon the evidence and under the instructions of the Court, where the end of the third line or the fourth corner of the tract is, and then a line should be run from this corner according to the call of the deed to the first station. It will be seen, there- fore, that the true location of this tract is to be determined by the same general principle which was applied in the case

of the sixty-four-acre tract. When the call is at all ambiguous or uncertain it is always a question of fact for the jury to decide what was meant, and to fix the boundaries according to what they may find from the evidence, under the law as given to them by the Court, was the real intention of the parties to the deed.

In the trial below the Court by its ruling prevented the defendant from developing its case. The defendant should have been permitted to put its deeds in evidence and to show adverse possession under them, if it could do so.

What we have said leads to the conclusion that the Court erred in refusing to instruct the jury as asked to do in the defendant's second prayer, which refers to the tract north of Catskin, and the Court should have given the instruction contained in the defendant's ninth prayer, in which the Court was requested to submit the question as to the true location of the boundaries to the jury. It necessarily follows from this ruling that the Court's instruction to the jury to answer the issues in favor of the plaintiff, if they believed the evidence, was erroneous.

We have carefully examined the case of *Peebles v. Graham*, 128 N. C., 222, which has been called to our attention by plaintiff's counsel, and we do not think it is applicable to this case in the view we have taken of it.

In their briefs counsel for the respective parties, for the purpose of illustrating and pointing their argument, selected and referred to different deeds introduced by the defendant, the calls of which are somewhat unlike. It would unnecessarily lengthen this opinion if we should attempt to lay down the principles applicable to each deed under which the defendant claimed. The general principles we have stated, if properly applied, will, we think, be found sufficient to enable the jury, under the instructions of the Court, to locate the boundaries described in each of said deeds. If the defendant at the next

trial shows, and the jury find, that there has been adverse pos-
session of any part of the disputed land which is covered by
any one of the deeds upon which defendant relies, sufficient
in law to bar the entry of the State at the time the grant
issued to the plaintiff Rowe, this adverse possession under
color of title will defeat the plaintiff's recovery as to that
part of the land. *Rowe v. Lumber Co.,* 129 N. C., 97.

The defendant contended that the controversy as to the
boundaries of the Casteen tract, which is north of the swamp,
should not have been re-opened, as it was a matter which had
been fully adjudicated and determined by this Court in its
former decision on the rehearing. *Rowe v. Lumber Co.,* 129
N. C., 97. We agree with the defendant to the extent of say-
ing that the Court below should have charged the jury in
exact accordance with the principle of that decision, which
was not done. The Court not only disregarded it, but
charged in direct opposition to it when the jury were told to
answer the fourth issue, as to the Casteen tract, "Yes." This
completely nullified the principle upon which it was held by
this Court that the matter should be decided, and the error
arose, we have no doubt, from a misapprehension by the
Court below of the true principle which had been settled by
the former decisions in this case. But the defendant is mis-
taken in supposing that the decision upon the rehearing was
*res judicata* in the sense that it completely eliminated that
tract from the case and entitled the defendant, as matter of
law, to judgment as to that part of the land. The issue sub-
mitted at the first trial was: Are the plaintiffs the owners
of the land in controversy or any part thereof, and, if of any
part, what part? The answer to that issue was "No." There
were three tracts of land in dispute, and if an error was com-
mitted as to any of them this Court must of necessity give a
new trial as to all, though there may have been no error com-
mitted as to one of them. This results from the form of the

issue. If a separate and distinct issue had been submitted as to each tract, and an error had been committed as to one only, the Court even in that case could have given a general new trial, but in its discretion could have restricted a new trial to the issue or issues as to which the error was committed. When the issue is general, embracing within its scope several distinct pieces of property or tracts of land, the new trial must be general, because the issue, and consequently the verdict, are in their very nature indivisible. This seems to have been expressly decided. *Beam v. Jennings,* 96 N. C., 82; *Holmes v. Godwin,* 71 N. C., 306. It is impossible to retain such a verdict as to one part and set it aside as to another part. The former decision on the rehearing is *res judicata* only in establishing this principle as the one which should govern in the trial of the case: that, as the call is "with Bear Branch to Catskin Swamp, thence with the run of said swamp down to the first station," the third line must be extended to run so that the run will be the next call or line of the tract. When the Chief Justice said the plaintiff must fail as to the tract north of the swamp he simply meant that upon the evidence in the case, if believed by the jury and if the correct principle of law is applied by the Court, the defendant must surely win; that is all. He could not under the circumstances have intended that the question should be taken from the jury and decided as matter of law in favor of the defendant.

It appeared that since this case was commenced L. P. Dosh, one of the plaintiffs, had died, and his devisee, M. V. Dosh, had been made a party to the action. The administrator of L. P. Dosh has not been made a party. Upon these facts the plaintiff requested the Court to charge that M. V. Dosh is not entitled to recover anything for her interest as devisee, as the trespass is alleged to have been committed before it was acquired. The Court refused to give the instruction

and the defendant excepted. The administrator of L. P. Dosh should be made a party, otherwise the plaintiff Rowe can only recover his share of the damages. *Winborne v. Lumber Co.,* 130 N. C., 32. But this error, if standing by itself, would only have involved a new trial, because, upon the defendant's own contention, there was only a recovery for more than should have been allowed, and, as we will order a new trial upon other grounds, the plaintiff, if so advised, may cause the administrator of L. P. Dosh to be made a party to this action, and this defect can thereby be remedied.

The defendant's motion to dismiss because the administrator of L. P. Dosh had not been made a party, which was made the first time in this Court, cannot be granted here, and could not have been granted even if it had been made in the lower Court, and as it was not the remedy provided by the statute. Clark's Code (3d Ed.), sec. 188; Acts 1887, ch. 389; *Wood v. Watson,* 107 N. C., 52, 10 L. R. A., 541; *Lynn v. Lowe,* 88 N. C., 478. The cases cited by the defendant for the position that a motion to dismiss may be made in this Court do not therefore apply.

Because of the errors which we have pointed out, the judgment must be set aside and a new trial awarded.

New trial.