C. L. LAUDIE and MARGARET E. LAUDIE, his Wife, v. WESTERN UNION TELEGRAPH COMPANY.

(Decided April 24, 1900.)

*Telegram—False Assurance as to Delivery—Embarrassment and Mental Anguish Resulting—Conflict of Evidence—Province of Jury—Duty of Company—Damages.*

1. Where it is conceded that the defendant was not guilty of negligence in failing to deliver a telegram, it is liable for its negligent assurance that it had been delivered.

2. On trial of issues of fact, or of questions of mixed law and fact, properly submitted, and there is conflicting evidence sufficient to go to the jury, the Court assumes as proved all facts found by the jury either directly or by necessary implication.

3. In case of negligent untrue assurance that a message had been delivered, such assurance is actionable, but the plaintiff can only recover such damages as resulted directly therefrom.

4. When practicable, the sender of a message should be promptly informed when a message can not be delivered.

CIVIL ACTION for damages for the mental anguish occasioned the *feme* plaintiff by the alleged negligent and untrue assurance that a death message had been delivered, tried

before *Allen, J.,* at January Term, 1900, of MECKLENBURG Superior Court.

The plaintiff lived in Charlotte, N. C., where on May 24, 1897, they lost by death a young child whom they desired to bury at Chesterfield, S. C. The telegraph line did not extend to Chesterfield, but did to Cheraw, S. C., and there was a telephone wire from Cheraw to Chesterfield used by defendant.

At the instance and request of his wife, Mr. Laudie, about 10 o'clock that day, sent the following dispatch to a relative of her's residing at Chesterfield:

*"T. L. Huntley, Chesterfield, S. C.*

"Frank dead. Meet depot at Wadesboro, 8 a. m.; bury him in Chesterfield. Grave 3 feet.

"C. L. LAUDIE."

He called the attention of the operator to the importance of the message, and paid the charges both for the dispatch and the telephone message. About 12 o'clock he returned, and inquired if the message had been delivered, and he testified that he was assured that it was. It turned out that such was not the fact, as owing to the telephone wire being down, the message was not delivered to Huntley until 10 o'clock next morning. There was a conflict of evidence as to assurance given Laudie, testified to by him about the delivery of the message. The operator testified that he told Laudie it was sent but could not tell him whether it was delivered.

The *feme* plaintiff upon receiving information of the delivery of the message, made arrangement for the trip and started off from Charlotte next morning on the train, with the body, and three children—on reaching Wadesboro, about 7 o'clock, there was nobody to meet her. She was detained there

about 10 o'clock before she could get away—having no one to accompany her but the driver of the hack to Chesterfield, a distance of 18 miles. She testified that she suffered great anguish of mind occasioned by the negligent and untrue assurance of the delivery of the message and from the embarrassment and loneliness growing out of it. When near Chesterfield, she met Mr. Mangum about 1 o'clock. He had been sent by Mr. Huntley to meet her.

The jury found (1) that the *feme* plaintiff was injured by the negligence of the defendant; (2) that the damage she sustained was $1,000.

There were some objections made by the defendant to some of the evidence, which are referred to in a general way in the opinion, as untenable. It was conceded that plaintiff was not entitled to recover for the non-delivery of the message under the circumstances—but it was insisted that she was entitled to recover on account of negligence in the assurance that the message had been delivered, and the mental suffering consequent upon it.

There were exceptions to his Honor's charge, adverted to in the opinion.

Judgment in favor of plaintiff for $500.

Appeal by defendant.

*Messrs. Jones & Tillett,* for appellant.
*Messrs. Osborne, Maxwell & Keerans,* for appellee.

DOUGLAS, J. This case was here before, being reported in 124 N. C., 528, being erroneously printed *Landie*. Nearly all the material facts were then set out and need not be fully repeated. In the case as now before us it appears that the telegraph wires did not go beyond Cheraw, but that from Cheraw to Chesterfield there was a telephone wire which was

28——126

used for the transmission of telegrams. The defendant included in its charges, which were prepaid by the husband of the plaintiff, the extra amount usually charged by the telephone company. This evidence is material only as tending to show that the defendant undertook to transmit the message to Chesterfield by telephone. It appears that at that time the telephone wire was down, and that therefore the telegram could not be forwarded. It is conceded that the defendant was not guilty of negligence in failing to deliver the telegram to the addressee, but that does not relieve it from liability for its negligent assurance that it had been delivered. It is true the defendant introduced evidence in contradiction, but where there is conflicting evidence sufficient to go to the jury, they alone can pass upon its credibility, and we must assume as proved all facts found by their verdict either directly or by necessary implication. This rule applies only to issues of fact properly submitted, or to questions of mixed law and fact in the absence of legal error in the trial. The plaintiff testifies that she confidently relied upon her kinsman Huntley meeting her, and that if she had not been assured that the telegram had been delivered, she would have taken her husband with her; and that she suffered great mental anguish in finding herself at Wadesboro practically alone and friendless with three helpless children and the dead body of another. She says the railroad agent, Biggs, was kind to her; but she was much delayed, and suffered greatly, not only from her disappointment but also from being compelled to travel eighteen miles through the country with no one but the driver. This testimony was clearly competent, and was certainly more than a scintilla. What she suffered, or whether she suffered at all, is not for us to say. The jury who heard the testimony in its entirety and had every opportunity to observe the demeanor of the witnesses, have said

she did.   To them alone belongs by constitutional provision the determination of the facts, and in the absence of any error in the conduct of the trial we can not disturb their verdict.   His Honor properly confined them to the consideration of such damage only as directly resulted from the negligent assurance that the telegram had been delivered.   He cautioned them with clearness and precision not to allow any damages on account of the failure to deliver the telegram, or of the consequences solely resulting therefrom; and to distinguish between the mental anguish caused by the negligence of the defendant from the sorrow that would naturally be felt by a mother for the death of her child.   While the circumstances of her bereavement must be taken into consideration in determining the question of her anguish, her damages must be measured only by the additional pain caused by the negligence of the defendant.   This may be great or little under different circumstances.   A degree of exposure which would merely stimulate the blood of vigorous manhood might be fatal to one weakened by age or enfeebled by disease.   So, a disappointment, slight and transient under ordinary circumstances, might sorely wound a heart whose bleeding strings were yet quivering with the agony of bereavement.

We think that the assurance of the defendant, false in fact, if not intention, was actionable negligence, and that the plaintiff can recover such damages as directly resulted therefrom.   While this point was neither argued nor directly decided when this case was here before, it was inferentially determined.   It was embraced in the first cause of action, and on page 532 we say:   "Even if the male plaintiff had not notified the defendant of the urgency of the message, its importance clearly appeared upon its face; and the negligence of the defendant in failing to deliver it *was aggravated by its negligent assurance that it had been delivered.*"   On that

trial the defendant relied upon its want of legal liability, and introduced no evidence. As the failure to promptly deliver a telegram is *prima facie* evidence of negligence, we were then compelled to treat the case in that view—coming before us as it did upon a demurrer to the evidence. The main questions then discussed were those decided in *Cashion v. Telegraph Co.,* 124 N. C., 459.

In *Hendricks v. Telegraph Co.,* at this term, we say: "We think that it is the duty of the company in all cases, when it is practicable to do so, to promptly inform the sender of a message that it can not be delivered. While its failure to do so may not be negligence *per se,* it is clearly evidence of negligence. In many instances by such a course the damage could be greatly lessened, if not entirely avoided. A better address might be given, mutual friends might be communicated with, or even a letter might reach the addressee. In any event, the sender might be relieved from great anxiety and would know what to expect. Moreover, it would *tend* to show diligence on the part of the company."

We see no error in the admission or exclusion of testimony, and we think the complaint sufficiently sets out the cause of action. We do not see the irreconcilable contradictions in the charge of his Honor so strenuously urged by the counsel for the defendant. We understand his Honor to charge substantially that, while the plaintiff can not recover for the failure of Huntley or anyone else to meet her as resulting from the failure to deliver the telegram, she can recover for such mental anguish as directly resulted from her placing herself unwittingly in circumstances of peculiar embarrassment in strict reliance upon the false assurance of the defendant, and in consequence thereof. The judgment is

Affirmed.