ROSSER v. WESTERN UNION TELEGRAPH COMPANY.

(Filed May 6, 1902.)

1. EVIDENCE—*Instructions—Presumptions.*

Where evidence is admitted for some purpose other than bearing upon the amount of damages and the trial judge instructs the jury to disregard it upon the question of damages, it is to be presumed that they followed the instructions and the admission of such evidence was not error.

2. TELEGRAPHS—*Mental Anguish—Instructions.*

Where, in an action against a telegraph company to recover damages for mental anguish caused by failure to deliver a telegram, the defendant requests the court to instruct the jury to use great care to distinguish the suffering caused by the death and that caused by failure of plaintiff to be able to attend the funeral, it was not error in trial judge in giving such instruction to omit the word "great" in connection with the word "care."

3. NEGLIGENCE—*Telegraphs—Messages—Delivery.*

The failure of a telegraph company to deliver a message on which the charges are prepaid is *prima facie* negligence.

4. NEGLIGENCE—*Telegraphs—Messages—Delivery.*

It is the duty of a telegraph company to make diligent inquiry whether a person to whom a prepaid message is addressed is within its delivery territory.

ACTION by B. F. Rosser against the Western Union Telegraph Company, heard by Judge *Walter H. Neal* and a jury, at September Term, 1901, of the Superior Court of MOORE County. From a judgment for the plaintiff, the defendant appealed.

*Seawell & Burns,* and *Black & Adams,* for the plaintiff.
*R. C. Strong,* for the defendant.

COOK, J. Plaintiff's brother delivered a message to defendant company's agent at Sanford, to be transmitted and

delivered to him (plaintiff) at West End, in these words: "Come home quick. Father is dead." The charges (40 cents) were prepaid. The message was never delivered. Inferentially it appears that the defendant company's line terminated at Aberdeen, and the line of another company extended thence to West End.

Plaintiff alleges in his complaint that by reason of the gross negligence, carelessness and wilful conduct of the defendant in not transmitting and delivering the message to him, he was prevented from being present to see his father before the interment and from being present at the funeral, and thereby suffered great damage, both in body and mind, to the extent of $1,900.

Defendant, in its answer, admits receiving the message, alleges that it was transmitted promptly to Aberdeen and there given to another and independent telegraph company, and that it, by special contract, was made the agent of the sender, without liability, to forward it over the line of said other company.

Upon the issues submitted, to-wit: "1. Did plaintiff, within sixty days after he had learned that said message had been sent, present to defendant company a claim in writing for damages for the alleged failure to deliver said message? 2. Was the message set out in the complaint sent under the contract set out in the answer, that defendant was made the agent of the sender to forward without liability said message over lines of other company when necessary to reach destination? 3. Did defendant negligently fail to deliver the message sent by C. K. Rosser to the plaintiff? 4. What damage, if any, is plaintiff entitled to recover?" The jury answered the first and third "Yes." There was no testimony bearing on the second, and that was answered by consent of the parties "No"; and to the fourth they answered $500. Defendant moved for a new trial for errors assigned in the record; the motion was overruled, and defendant appealed.

The first exception is to the admission by the Court of plaintiff's evidence that he "saw him (his father) last time 8th January, 1898," and defendant insists that the Court erred in admitting it upon the grounds that the jury should not permit that to enter into the question of damages; that it is foreign to the case, and may have been considered by the jury in increasing the amount of damages, as the shock would be greater in being the more unexpected; and that this could not have been in the contemplation of the parties in making the contract.    But we can not sustain this exception, for that the "Court specially instructed the jury that they should not permit that evidence to enter into the question as to the amount of damages, if any, they should award the plaintiff; that it had been stated by plaintiff's counsel that the evidence was brought out simply to show that he was in good health when last seen."    And the evidence shows that plaintiff testified, without objection, that "his health was tolerably fair." Whether the jury *may have considered* this evidence in increasing the damages, after receiving the instructions from the Court, would be only a matter of speculation, and nothing appearing to the contrary, we must assume that they observed their instructions.    This testimony was introduced for some purpose other than bearing upon the amount of damages, and the jury were bound under the instructions given not to consider the same in that connection.

The fifth exception (as numbered in the brief of defendant's counsel) is to the modification of their sixth instruction asked to be given, to-wit:    "That great care should be used by the jury to distinguish the suffering caused by the death of plaintiff's father, for which defendant is in nowise responsible, and that caused by plaintiff being unable to attend the funeral."    His Honor gave the instruction as asked, but omitted the word "great" and charged the jury that "care should be used," etc.    In making this modification there is

no error.    The Court having called the attention of the jury
to the difference between the suffering caused by the *death*
of the father and that caused by the *inability* to attend upon
interment and funeral, and instructed them that they should
use *care* to distinguish them in making up their verdict, fully
meets the requirements of the law.    No greater care was in-
cumbent upon the jury in considering this element of the case
than any other.    It was their duty to be careful in the con-
sideration of each fact material to be found and the evidence
bearing upon each.    The "great care" or "caution" referred
to in *Young v. Tel. Co.,* 107 N. C., 383, 9 L. R. A., 669, 22
Am. St. Rep., 883, and *So Relle v. Tel. Co.,* 55 Tex., 308,
40 Am. Rep., 805, relates to the *duty* of the *Judge* in the
trial of the case, in calling "the attention of juries    *    *    *
to the fact" that damages are recoverable for the *disappoint-
ment and regret occasioned by the fault or neglect* of the com-
pany, and *not* for the grief *occasioned* by the *death* of the
parent.    From the charge given by his Honor, it appears
that the attention of the jury was specifically called to this
distinction, and they were instructed to use "care" to distin-
guish them.    This shows that the *Court* did use "great cau-
tion" in the trial, and had it appeared to his Honor that the
jury had disobeyed his instructions, it would have been
within his discretion to set the verdict aside and order a new
trial, which he has refused to do.

The other exceptions relate to the liability of the defend-
ant in not delivering the message, and can not be sustained.
If there was any evidence tending to show that the message
ever reached West End, or that it reached Aberdeen, or that
it was ever transmitted from Sanford, it does not appear in
the record certified to this Court; and if there was such, the
defendant obtained the full benefit of it in the following part
of the charge: "If you find from the evidence that the mes-
sage was delivered to the defendant, with the charges prepaid,

and you further find from the evidence that the defendant failed to deliver the message, a *prima facie* case is made out, and the burden would then rest on the defendant to show matter to excuse its failure." The message having been shown by the testimony, and also admitted in the answer, to have been received by defendant and the charges prepaid, it then became its duty to deliver it to the addressee at the point to which it was addressed. If, however, that could not be done, then it was incumbent upon defendant to show that it had performed its part of the contract in exercising due diligence in endeavoring to do so. The fact that plaintiff lived several miles from West End does not excuse the defendant from making prompt and diligent inquiry to see if he were not within its delivery at that point when the message arrived; or, if defendant delivered the message promptly to its connecting and independent line, then it was its duty to have shown it, in order to excuse itself from the alleged negligence, provided that would be a legal excuse. All of the facts relating to the transmission of the message were within the possession of the defendant, and it did not choose to disclose them to the Court and jury. From the very nature of telegraphy, neither the sender nor sendee could personally know what became of the message, or why it was not received at its destination, or, if received, why not delivered.

We see no error in the rulings of his Honor, and the judgment of the Court below is

Affirmed.