This is an action brought by the feme plaintiff to recover damages for mental anguish alleged to have been suffered by her on account of her failure to attend her father's funeral, which she would have attended but for the negligence of the defendant in failing to deliver a telegram informing her of her father's death. (432) The telegram was as follows: "Mount Airy, N.C. Nov. 3, 1902. Mrs. Frank Codgell, Charlotte, N.C. Your father died suddenly this morning. W. F. Martin."
It is admitted in the complaint that the name of the sendee in the message was misspelled "Codgell," instead of "Cogdell," as it should have been. The mistake was caused by transposing the two letters g and d.
The assignments of error include thirty-nine exceptions. Thirty-two of these, referring to the admissibility of evidence become practically immaterial in the view we take of the case. The exceptions to the refusal of prayers and to the instructions as given, aside from the usual defensive prayers for nonsuit and direction of the verdict, are substantially included, in principle at least, in the following prayer: "That the defendant company having received a telegram for transmission addressed to Mrs. Frank Codgell was under no obligations to find, or attempt to find, the feme plaintiff and deliver the message to her, and the jury are therefore instructed to answer the first issue `No.'" The record states that the defendant introduced no testimony.
In discussing the points involved in this case, we will not attempt to follow the order of the exceptions, but will state the general principles as they suggest themselves. It is well settled that a telegraph company is in the nature of a common carrier, and, subject to reasonable regulations, is required to receive and promptly transmit and deliver all messages tendered in good faith. It may require prepayment, but if it accepts a message without such requirement it is held to the same degree of care and diligence as if the proper charges had been prepaid. If for any reason it cannot deliver the message, it becomes its duty to so inform the sender, stating the reason therefor, *Page 308 
so that the sender may have the opportunity of supplying the deficiency, whether it be in the address or additional cost of delivery. The (433) failure to notify the sender of such nondelivery is of itself evidence of negligence. Proof or admission that the company received a message for transmission and failed to deliver it to the sendee, within a reasonable time, raises a prima facie case of negligence, and imposes upon the defendant the burden of alleging and proving such facts as it may rely on in excuse. In the case at bar it clearly appears that a message was received by the defendant which was intended for the plaintiff, although her name was misspelled by the transposition of two letters. The defendant did not prove or even allege any effort whatever to deliver the message. There is no evidence that it was sent to Charlotte, nor was any notice given to the sender of its nondelivery until eight or ten days after it was received for transmission. Apparently not even then would such notice have been given had not the sender called at the office and inquired what had become of the message. We think the defendant must lie under the burden which it made no attempt to lift or shift. Under these circumstances the plaintiff was not required to prove affirmatively the negligence of the defendant, or, what is equivalent thereto, that the defendant might have found the sendee by proper diligence. It follows that whatever error there may have been in the admission of evidence tending to prove that fact was immaterial and harmless in view of the legal presumption to the same effect. If any evidence has been introduced by the defendant to rebut the presumption so as to raise a question as to the relative weight of the evidence, the case would be different.
The above principles are too well settled by the decisions of this Court to require any citations from other jurisdictions. The presumption of negligence from the acceptance and nondelivery of a telegram is held in the following cases: Sherrill v. Telegraph
(434) Co., 116 N.C. 655; Hendricks v. Telegraph Co., 126 N.C. 304, 78 Am. St. Rep., 658; Laudie v. Telegraph Co., 126 N.C. 431, 78 Am. St. Rep., 668; Rosser v. Telegraph Co., 130 N.C. 251; Hunterv. Telegraph Co., 130 N.C. 602.
In Sherrill's case this Court says, through Clark J., on page 656: "The plaintiff having shown the delivery of the message to the defendant, with the charges prepaid (and it would have been the same if the defendant had accepted the message with charges to be collected), and the failure to deliver the message, a prima facie case was made out, and the burden rested on the defendant to show matter to excuse its failure." *Page 309 
In Hendricks v. Telegraph Co., 126 N.C. 304, this Court says, on page 309: "It is well settled that where a telegraph company receives a message for delivery and fails to deliver it with reasonable diligence it becomesprima facie liable, and that the burden rests upon it of alleging and proving such facts as it relies upon to excuse its failure."
The same language is quoted with approval in Laudie v. Telegraph Co.,126 N.C. 431, 436.
In Rosser v. Telegraph Co., 130 N.C. 251, the Court below charged the jury as follows: "If you find from the evidence that the message was delivered to the defendant with the charges prepaid, and you further find from the evidence that the defendant failed to deliver the message, a prima facie case is made out, and the burden would then rest on the defendant to show matter to excuse its failure." In approving this instruction this Court, through Cook, J., says, on page 255: "The message having been shown by the testimony, and also admitted in the answer, to have been received by defendant and the charges prepaid, it then became its duty to deliver it to the addressee at the point to which it was addressed. If, however, that could not be done, then it was incumbent upon defendant to show that it had performed its part of the contract in exercising due diligence (435) in endeavoring to do so."
"All of the facts relating to the transmission of the message were within the possession of the defendant, and it did not choose to disclose them to the court and jury. From the very nature of telegraphy, neither the sender nor sendee could personally know what became of the message, or why it was not received at its destination, or, if received, why not delivered."
That a telegraph company is in the nature of a common carrier, owing certain duties to the public irrespective of a personal contract, is held in Cashion v. Telegraph Co., 124 N.C. 459, 45 L.R.A., 160; Laudie v.Telegraph Co., 124 N.C. 528. In the former case this Court says, on page 466: "One other principle must be kept in view: A telegraph company is in the nature of a common carrier. Claiming and exercising the right of condemnation, which can be done only for a public purpose, it is thereby affected with a public use. It owes certain duties to the public which are not dependent upon a personal contract, but which are imposed by operation of law. A simple contract is an agreement between two parties, a drawing together of two minds to a common intent, and must be voluntary as well as mutual. Whenever a man, at a proper time and place, presents a telegram to the company for transmittal, and at the same time tenders the proper *Page 310 
fee, the company is bound to receive, transmit and deliver it with reasonable care and diligence. It cannot refuse to receive it, and while it may protect itself by reasonable regulations, it cannot insist upon a personal contract contrary to its usual custom or to public policy. As was said in Reese v. Telegraph Co., 123 Ind. 294, 7 L.R.A., 583, the failure of the telegraph company to promptly deliver (436) a telegram "is not a mere breach of contract, but a failure to perform a duty which rests upon it as the servant of the people."
In Laudie v. Telegraph Co., 124 N.C. 528, this Court says, on page 533: "Moreover, the defendant as a common carrier, owed to the plaintiff a public duty which it should have performed with reasonable care and diligence. It cannot be relieved from liability for the proximate results of its own negligence, if it existed, by unreasonable regulations or technical objections."
That it is the duty of the telegraph company to promptly inform the sender of a message when, for any reason, it cannot be delivered, is held in Hendricks v. Telegraph Co., 126 N.C. 304; Laudie v. Telegraph Co.,126 N.C. 431; Bright v. Telegraph Co., 132 N.C. 324; Hinson v. TelegraphCo., 132 N.C. 467, and Bryan v. Telegraph Co., 133 N.C. 603.
In Hendricks v. Telegraph Co., 126 N.C. 304, this Court says, on page 311: "We think that it is the duty of the company, in all cases where it is practical to do so, to promptly inform the sender of a message that it cannot be delivered. While its failure to do so may not be negligence perse, it is clearly evidence of negligence. In many instances by such a course the damage could be greatly lessened, if not entirely avoided. A better address might be given, mutual friends might be communicated with, or even a letter might reach the addressee. In any event, the sender might be relieved from great anxiety and would know what to expect. Moreover, it would tend to show diligence on the part of the company."
This language is quoted with approval in Laudie's case.
In Hinson's case, Connor, J., speaking for the Court, says: "Viewed from this standpoint, the defendant had in its possession a message addressed to M. L. Hinson with no direction as to place of residence other than the city of Columbia, S.C. Its duty upon this state (437) of facts was to use every reasonable effort to find and deliver the message to the sendee, and, upon failure to do so, to ask for a better address." *Page 311 
This would dispose of the case, provided there had been no mistake in the spelling of the name of the sendee. In any event, we do not think that such a mistake would relieve the defendant from the burden of showing that it could not have delivered the message with the exercise of reasonable diligence. The defendant does not allege any effort whatever on its part, but contends that the misspelling of the name relieved it from any such obligation. This contention cannot be sustained upon any legal principle.
Suppose a telegraph company were to receive a prepaid message addressed to a well-known resident named Brown, could it justify itself in keeping both the money and the telegram without any effort whatever to deliver, simply because the addressee happened to spell his name Browne? If the company was unable after reasonable diligence to deliver the message on account of the misspelling of the name, it should set those facts up in defense. This would then invoke the doctrine of idem sonans, and raise a question of fact, to be determined by the jury, as to whether the correct spelling of the name and that used in the message were sufficiently similar in sound to suggest to the average telegraph operator the identity of the sendee. We do not mean to say that the similarity of sound must be sufficient to absolutely fix the identity of the addressee, but that it must be such as to enable the employees of the company at the terminal office to find the addressee with reasonable search and inquiry. In the case at bar this question was properly left to the jury. There is much similarity in sound and much greater similarity in looks. The mistake is caused by the transposition of two letters, an error that is frequently committed by careful writers and typesetters. On the second page of the record in this case the word "sworn" is printed "sowrn" the o and the (438) w being transposed. In Herman v. Butler, 59 Ill. 225, a petition for certiorari was refused to review a judgment in favor of Seth Butler against said Herman entered by default upon summons wherein the plaintiff was designated as Seth Bulter. As will be seen, the mistake consisted in the transposition of the letters l and t. In State v.Patterson, 24 N.C. 359, 38 Am. Dec., 699, Gaston, J., speaking for the Court, says: "It is also well established that a name merely misspelled is nevertheless the same name." Many variations in sound greater than that under consideration have been held to be merely misprisions in spelling in this State as well as in other jurisdictions; but it is useless to repeat them. A great many are set out in State v. Collins, 115 N.C. 716; and still more in 21 Am. Eng. Ency. (2 Ed.), 313, et seq. If the doctrine ofidem sonans is applicable to *Page 312 
criminal actions involving a long term in the penitentiary, we see no reason why it should not be invoked in civil cases where the attending circumstances justify its application. While the issue of contributory negligence was found in favor of the plaintiff, we feel compelled to say that in cases like the present we see no room for its application. The only negligence possibly imputable to the sendee is that of the sender in misspelling her name. This act of negligence was entirely antecedent to the negligence of the defendant, and in no sense concurrent therewith. Moreover, the defendant, got the full benefit of that defense under the instructions as to the doctrine of idem sonans. If the dissimilarity in spelling were so great as to render it practically impossible for the defendant to identify the addressee after the exercise of due diligence, then there would be no negligence on the part of the defendant, and consequently, neither occasion nor necessity for the defense of contributory negligence. If on the contrary the defendant (439) could by the exercise of reasonable diligence have identified the sendee and delivered the message in spite of the previous negligence of the sender in misspelling the name, it could not set up such antecedent negligence in bar of recovery. The judgment of the court below is
Affirmed.
Cited: Hunter v. Tel. Co., post, 469; Harrison v. Tel. Co., 136 N.C. 381;Green v. Tel. Co., ib., 492; Carter v. Tel. Co., 141 N.C. 378; Helmsv. Tel. Co., 143 N.C. 392; Woods v. Tel. Co., 148 N.C. 5, 6, 7; Shaw v.Tel. Co., 151 N.C. 642.