McCaul v. Telegraph Co.

JENNIE M'CAUL, by next friend, v. WESTERN UNION TEL-
EGRAPH COMPANY.

(*Jackson.* April Term, 1905.)

TELEGRAPH COMPANIES. Not required to deliver messages
at residence of addressees beyond place of destination, and in
the country, when.

Telegraph companies are under no legal obligations to deliver a
telegram to addressees at their residence beyond the place of
destination of the message, and three and one-half miles in the
country therefrom, where the message is taken by the receiving
operator without notice that the addressees so resided, three and
one-half miles in the country from such destination, and where
charges were neither paid nor guaranteed for delivering the
message at such residence of the addressees.

FROM GIBSON.

Appeal from the Circuit Court of Gibson County.—
LEVI S. WOODS, Judge.

W. W. POWERS and HARWOOD & WADE, for McCaul.

DEASON, RANKIN & ELDER and SHIELDS, CATES &
MOUNTCASTLE, for Telegraph Co.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The plaintiff in error, a married woman, living in Gibson county, Tenn., was notified by telegram from Sikeston, Mo., where her young son was visiting, that he had been accidentally wounded. On the receipt of this intelligence she left for that place, reaching the bedside of her son on the 17th of November, 1903. The day after her arrival, he died. Desiring to take his body back to her home for interment, but lacking the means to do so, after his death she prepared and caused to be delivered to the operator of the Western Union Telegraph Company at Sikeston, for transmission to Trenton, Tenn., the following message:

"11.-18-1903. Dated—Sikeston, Missouri—18, To Mrs. M. C. McCaul, care of Hugh McCaul, Trenton, Tennessee. Have bank wire bank of Sikeston $50.00, my son Hugh dead here. [Signed] Jennie McCaul."

On delivering this telegram to the operator at Sikeston, there was paid to him the regular tariff rate of twenty-five cents for its transmission to Trenton, to which place it was at once started over the wires of the defendant company, reaching there about 7:10 o'clock of the evening of the 18th. When received, as there was no messenger service from 7 p. m. to 7. a. m., the telegram was put on file, by the operator receiving it, to be sent out the following morning.

At the hour of 7 a. m. of the 19th, a messenger came to the office, and he was at once given the message, with di-

rection that he take it out for delivery to the sendees, if they, or either of them, could be found in the town of Trenton. Not finding either of the parties, it was returned to the office, and in the afternoon was sent by special hand to the home of the sendees, which was three and one half miles in the country, and was delivered there at 4 p. m.

Mrs. McCaul, the sender of this message, knew the sendees lived at that distance from Trenton, but she failed to cummunicate the fact to the operator at Sikeston, and also failed either to pay, or guarantee payment, for the extra service required in its delivery to the home of the sendees.

The record shows that while this telegram was thus delivered after the banking hours observed in Trenton, yet, if application had been made to the officers of the bank, with which Mrs. McCaul did business, either by herself or Mr. Hugh McCaul, during the evening of the 19th, that they would have immediately wired the sum asked for to the bank in Sikeston. No application, however, was made to these officers until the following day, when the money was at once transmitted, reaching Sikeston, however, too late to answer the purpose of the sender of the message. It was then found the body of young McCaul was so far advanced in decay that it would be dangerous to undertake to carry it to Gibson county, so it was buried at or near Sikeston.

Upon these facts the trial judge said to the jury, in substance, that the obligation of the defendant in error

was to transmit and attempt to deliver without unreasonable delay, this message to the sendees, or one of them, at Trenton; that there was no obligation resting on the company to send it out to the home of the sendees, three and one-half miles in the country; and, if they found that diligence was used in an effort to deliver at Trenton, then they should find for the defendant.

We think this instruction was correct. The money which was paid by the sender at Sikeston was for the service of transmission and delivery at Trenton. If it should be held, in the absence of all knowledge on the part of the operator at Sikeston that the sendees lived three and one-half miles from the place to which it was directed, the company was to be held liable for lack of prompt delivery at the residence of the sendees, then it might be so equally held, if it had happened that these sendees resided ten miles, or even a greater distance from there. Such a holding would impose an unreasonable burden on the company, especially in view of the fact that the telegram, on its face, as we think, implied that the sendees, one or both, were to be found in Trenton.

It is an easy matter for the sender to provide for the delivery of his telegram, whatever may be the distance of the sendee from the point to which it is directed. All that he has to do is to notify the receiving operator, when delivering the telegram for transmission, that the sendee lives at a place other than the one to which it is directed. If received for transmission uncondition-

McCaul v. Telegraph Co.

ally by one authorized so to do after such notice, the law will imply an obligation upon the part of the company to deliver the message at the place of the sendee's residence, or if, at the time of such receipt, payment is made or guaranteed for such delivery, in either case a failure to deliver within a reasonable time would be a breach of duty on the part of the company, for which it would be liable. But when it appears, as in this case, that the receiving operator had no such notice, and charges were neither paid nor guaranteed for delivering the message at the residence of the sendees, living, as they did, at a point remote from Trenton, the company was under no legal obligation to deliver it at that point. *Western Union Co.* v. *Harvey* (Kan.), 74 Pac., 250; *Western Union Tel. Co.* v. *Swearingen* (Tex. Sup.), 67 S. W., 767.

We think the charge of the trial judge correctly stated the rule of law controlling in this case, and without more his judgment is affirmed.