T. L. HOAGLIN AND S. D. HOAGLIN v. WESTERN UNION
TELEGRAPH COMPANY.

(Filed 13 March, 1913.)

1. Telegraphs—Service Messages—Negligence.

Where a telegraph company received a telegram for transmission and delivery and then finds that owing to an unavoidable occurrence it is unable to do so, it is its duty to notify the sender, and its failure in this duty is evidence of negligence.

2. Telegraphs—Failure in Delivery—Negligence—Evidence—Prima Facie Case.

Where the failure of a telegraph company to deliver a telegram which it has accepted for transmission is shown a *prima facie* case of negligence is made out, which may be rebutted by evidence on behalf of the company showing that it had exercised due care, or was prevented from delivering it by causes over which it had no control.

3. Telegraphs — Service Messages — Unavoidable Delays — Notify Sender—Free Delivery Limits—Negligence.

Where a telegraph company has accepted a message for transmission and has necessarily sent it to an intermediate station, and the operator at the latter place finds that it cannot be forwarded on account of an unavoidable accident to the line, it is his duty to send a service message to the sending office so that the sender may be notified; and where this is not done, and damages are proximately caused, the defendant cannot excuse itself from liability merely by showing that the sender lived beyond the free delivery limits, without showing that it reasonably endeavored to find him within said limits, or that he was not therein.

4. Telegraphs—Unavoidable Interruptions—Repair of Lines—Negligence—Evidence.

While a telegraph company is not responsible for delays due to unavoidable interruptions in the working of its lines, such as those resulting from storms or atmospheric disturbances, or any other causes over which it has no control and against which, in the exercise of ordinary prudence and foresight, it was not reasonably practicable to guard, it must, under such conditions, make diligent effort to remove the obstruction and restore its line to a normal condition, so it can perform its usual functions.

5. Telegraphs — Negligence—Unavoidable Delay—Service Message —Issues—Proximate Cause—Instructions.

Where in an action for damages against a telegraph company there is evidence of the defendant's negligence in failing to de-

liver a message with reasonable promptness, upon which an issue has been submitted to the jury, and there is further evidence of negligence on the part of the defendant in not sending a service message to notify the sender, and that if the sender had been so notified he could have used other means of communication which would have avoided the injury, upon which no issue was submitted, it is reversible error for the judge to charge the jury to answer the issue "Yes" if they found the service message had been sent: (*a*) it excluded the question of proximate cause and misled the jury; (*b*) it was for the jury to decide whether other means of communication were available, the use of which would have avoided the injury, and whether the sender would have used them; (*c*) or whether the service message could reasonably have been delivered to the sender under the circumstances.

6. **Telegraphs—Negligence—Instructions—Appeal and Error—Indivisible Verdict—New Trial—Practice.**

Where there are two elements of negligence arising in an action and blended in the issue, and the court charges the jury incorrectly as to one of them, so that this Court may not know with certainty that the jury were not influenced by the error, the verdict being indivisible, a new trial will be granted.

7. **Telegraphs—Service Messages—Negligence—Separate Issues.**

Where in an action against a telegraph company two acts of negligence are alleged, with evidence tending to establish each of them, one being the negligent failure of the defendant to transmit and deliver the message and the other relating to the necessity for a service message to inform the sender that the message could not be delivered owing to the unavoidable interruption of the lines, the plaintiff claiming that he could satisfactorily have used other means of communication, it is better to present the two questions of negligence in separate issues.

APPEAL by defendant from *Foushee, J.,* at May Term, 1912, of MECKLENBURG.

These two actions were brought to recover damages for negligently failing to transmit and deliver a telegraphic message sent by the plaintiff, S. D. Hoaglin, from Pineville, N. C., to his brother, the other plaintiff, who was at Granite Quarry, N. C. The two cases were consolidated by consent of the parties, and tried together, as they involved substantially the same questions of fact and law. The jury returned the following verdict:

1. Was the defendant guilty of negligent delay in the transmission and delivery of the message sued on, as alleged in the complaint? Answer: Yes.

2. If the telegram had been delivered promptly, could and would T. L. Hoaglin have attended the funeral of plaintiff's mother, alleged in the complaint? Answer: Yes.

3. What damages, if any, is the plaintiff T. L. Hoaglin entitled to recover of the defendant for mental anguish caused by said negligent delay in the transmission and delivery of the said message? Answer: Five hundred dollars.

4. What damages, if any, is the plaintiff S. D. Hoaglin entitled to recover of the defendant for mental anguish caused by said negligent delay in the transmission and delivery of the said message? Answer: Two hundred and fifty dollars.

Judgment was entered thereon, and defendant appealed.

The evidence tended to show these facts: Plaintiff S. D. Hoaglin, whose mother had died about 12 o'clock M. on Saturday, 3 June, 1911, sent the following message at 5:15 P. M. to his brother, T. L. Hoaglin:

T. L. HOAGLIN,
    *Granite Quarry, N. C.*
Mother died to-day. Bury to-morrow at 10 o'clock. Come.
                       (Signed) S. D. HOAGLIN.

The message was filed with the defendant at Pineville, N. C., which is 10 miles south of Charlotte, N. C., on 3 June, 1911, at 5:15 P. M.; it was received at Charlotte, at 5:30 P. M. the same day, the operator in the Charlotte office stating that it was on his hook when he returned to his instrument at 5:30 o'clock. There was but one continuous wire from Charlotte to Granite Quarry. He called the office at the latter place over this wire, and found it was "open," which means that he could not use it, as it was "out of commission," or broken at some place; where, he could not tell. It continued to be "out of order" until the next morning. Trains left Granite Quarry at 8:30 and 10 o'clock P. M. and at 1:30 and 6 o'clock A. M. T. L. Hoaglin stated that he could have walked to Salisbury and taken a train there, and would have done so, had he received the message in

time to have reached Pineville before the funeral, the distance from Granite Quarry to Salisbury being only 5 miles. The message was sent to R. E. Mitchell, a train dispatcher at Salisbury, over the wires, for the purpose of having it sent by the conductor of the train at 9:50 A. M., which was Sunday. It was delivered by the conductor to T. L. Hoaglin at Granite Quarry at 10:30 the same morning, but too late for him to attend the funeral, which was then being held. When W. H. Crum, the lineman, who was at or near Thomasville during the afternoon of Saturday, 3 June, 1911, returned to Salisbury, about dusk, on No. 35, he was told by Mitchell of the break in the wire to Granite Quarry, but as it was dark he did not go to the place of the break that night, although he had a railroad velocipede, but waited until next morning, when he went on his velocipede in search of the break in the wire, and found it about 4½ miles from Salisbury and in sight of Granite Quarry, that is, about one-half mile from that place. A heavy electrical and wind storm had passed over that section about 4 o'clock P. M. on Saturday, 3 June, and it had blown a tree down, which fell across the wire. Crum pulled the wire from under the tree and spliced and replaced it on the pole. This was about 10 o'clock Sunday morning. There was another lineman at Salisbury, but it does not appear why he was not called upon to repair the broken wire. There was a telephone line connecting Pineville with Granite Quarry, and it appeared that neither the Charlotte nor the Salisbury operator notified the sender, by a service message, that his telegram could not be delivered. S. G. Hoaglin testified that he could have used the telephone had he been notified by the defendant of the failure to deliver his message.

The defendant requested the court to give the following instructions, which were modified, as will appear, and defendant excepted to the modification:

1. If the jury find from the evidence and by the greater weight thereof that on the 3d day of June, 1911, at about 4:25 o'clock P. M., the wire of the defendant between Salisbury and Granite Quarry was broken or disconnected by a tree falling across it on account of a wind or electric storm, and that the said interruption continued until after 10 o'clock of the morn-

ing of 4 June, 1911, and that the only wire reaching from Char-
lotte to Granite Quarry available to the use of the defendant
was the said wire, which was broken or interfered with by the
said electric storm, and that the said interference or breaking
of the said wire by the said storm was the cause of the defendant
not delivering the message referred to in the complaint in this
action, then the jury are instructed to answer the first issue
"No."

The court refused to give the foregoing instruction, as prayed
by the defendant, but added to the same the following: "Pro-
vided you find that the defendant could not, by the exercise of
reasonable care and due diligence, have transmitted and deliv-
ered the message to T. L. Hoaglin, notwithstanding the storm."

2. If the jury find from the greater weight of the evidence
that a tree fell across and broke the defendant's wires about
4:25 P. M. on 3 June, by reason of a storm, and that the defend-
ant, with due diligence, removed the tree and reconnected the
wires, and that the defendant's delay in delivering the message
was caused by said tree being blown on the wires by a storm,
the jury are instructed to answer the first issue "No."

The court refused to give the foregoing prayer, but added
thereto the following: "Provided you find that the defendant
could not, by the exercise of reasonable care and due diligence,
have transmitted and delivered the message to T. L. Hoaglin,
notwithstanding said storm breaking its said line."

The court, among other instructions, charged the jury as fol-
lows: "If you find from the evidence in this case that the de-
fendant could not, on account of its wire between Salisbury
and Granite Quarry being down, deliver the message to the
sendee, T. L. Hoaglin, then it was the duty of the defendants,
the telegraph company, to use reasonable diligence to notify the
sender, S. D. Hoaglin, and if it failed to do so, then the defend-
ant was negligent, and you will answer the first issue 'Yes.'"
Defendant excepted to this instruction, and now assigns it as
error.

*Stewart & McRae for plaintiff.*
*Tillett & Guthrie for defendant.*

WALKER, J., after stating the case: There was error in the last instruction given by the court, but not in telling the jury that, when the defendant discovered it could not send the message over its wire from Charlotte, it was its duty to notify the sender at Pineville of the fact, for that is correct. *Hendricks v. Telegraph Co.,* 126 N. C., 304; *Cogdell v. Telegraph Co.,* 135 N. C., 431; *Hood v. Telegraph Co.,* 135 N. C., 622. The defendant's failure to notify the sender of its inability to deliver the message was evidence of negligence. *Hood v. Telegraph Co., supra; Hendricks v. Telegraph Co., supra; Cogdell v. Telegraph Co.,* 135 N. C., 431; *Woods v. Telegraph Co.,* 148 N. C., 1. It having been shown that the message had not been delivered, a *prima facie* case of negligence was made out, as was decided in the cases we have just cited. The Court said in *Hendricks v. Telegraph Co., supra:* "It is well settled that where a telegraph company receives a message for delivery and fails to deliver it with reasonable diligence, it becomes *prima facie* liable, and that the burden rests upon it of alleging and proving such facts as it relies upon to excuse its failure." This very language was repeated in *Cogdell v. Telegraph Co., supra.* See, also, *Laudie v. Telegraph Co.,* 126 N. C., 431; *Hunter v. Telegraph Co.,* 130 N. C., 602; *Rosser v. Telegraph Co.,* 130 N. C., 251. This was not controverted, as we understand, by the defendant, and it undertook to explain its apparent gross neglect of duty. Whether it succeeded in doing so was for the jury, and so far as the duty resting upon it to repair the break in its wire from Charlotte to Granite Quarry is concerned, the charge of the judge was more than favorable to it, not so much in respect of what he did say on that branch of the case as in respect of what he did not say. It appears, from R. E. Mitchell's testimony, that there was a violent storm at 4 o'clock in the afternoon of Saturday, 3 June, 1911, and that the wire to Granite Quarry went down at 4:25 o'clock, so that at least sixteen hours elapsed after the break in the wire before there was any attempt made to mend it. The witness W. H. Crum, who was a lineman, did not return to Salisbury until dusk, but why he was not earlier called in to make the needed repairs and why he did not use his velocipede that night with a lantern, the

trains having stopped running for the night, does not clearly appear. Nor does it appear why the other lineman at Salisbury was not called upon to do the work. It seems to have been a very simple operation, and the break in the line was easily discoverable, according to Crum, as the tree was lying on the wire very near the track, and could not easily have escaped the attention of a lineman on the car with a light, even in the nighttime, and especially of a man who was keeping a watchful lookout for it. Why the defendant failed to send a service message, notifying the sender of the accident to its line, is not explained. The fact that S. D. Hoaglin lived 2 miles from Pineville, if he did, was no excuse for not sending the message to the office at Pineville, so that if the sendee was there, he could be notified. The operator at Charlotte knew that the wire was open as early as 5:35 o'clock, Saturday afternoon, just twenty, or at the most, thirty minutes after it had been filed at Pineville. It does not follow that S. D. Hoaglin was not in Pineville at that time, simply because he lived 2 miles from the town. 37 Cyc., 1678. It was said in *Rosser v. Telegraph Co.,* 130 N. C., 255: "The message having been shown by the testimony, and also admitted in the answer, to have been received by defendant and the charges prepaid, it then became its duty to deliver it to the addressee at the point to which it was addressed. If, however, that could not be done, then it was incumbent upon defendant to show that it had performed its part of the contract by exercising due diligence in endeavoring to do so. The fact that plaintiff lived several miles from West End does not excuse the defendant from making prompt and diligent inquiry to see if he were not within its delivery limits at that point when the message arrived." It is natural to suppose that Hoaglin may have been in Pineville, awaiting an answer from his brother, as, with due care on the part of the defendant, it required a very short time for such a reply to reach him. We do not think, though, that defendant was required to deliver the service message to him beyond the corporate limits of Pineville, or beyond its free delivery limits there, if it has any. *Railway v. Stroude,* 82 Ark., 117; *Telegraph Co. v. Davis,* 71 S. W., 313; *Telegraph Co. v. Matthews,* 113 Ky., 188; *McCaul*

*v. Telegraph Co.,* 114 Tenn., 661. It did not know when it
received the message for transmission and delivery to T. L.
Hoaglin that its line was not in condition for use, and it could
not well have anticipated the storm or what its effect would be
on the efficiency of its service. It was in no default up to the
time that H. J. Hale, its operator at Charlotte, returned to the
office and tested the wires and found the one to Granite Quarry
open. It is a little surprising, without explanation, that the chief
night operator of a large office like the one in Charlotte, who is
supposed to be careful, and who, at least, should be, failed at
the opportune moment to notify the sender of the situation he
had discovered. There is no satisfactory explanation of his
conduct in this record. But while the fact that the message
was not transmitted and delivered is *prima facie* evidence of
negligence, the presumption thus raised may be rebutted by
evidence showing that the company exercised due care or was
prevented from making delivery by causes over which it had
no control. 37 Cyc., 1673; *Fowler v. Telegraph Co.,* 80 Me.,
381. It does not insure prompt transmission, and could not
justly be required to do so, and is liable only for negligence.
It follows that it is not responsible for delays due to unavoid-
able interruptions in the working of its lines, such as those
resulting from storms or atmospheric disturbances, or any other
causes over which it has no control and against which, in the
exercise of ordinary prudence and foresight, it was not reason-
ably practicable to guard. It must, though, by the exercise of
due care, provide against all preventable causes. If its wires
are injured by a storm, it must make diligent effort to remove
the obstruction and restore them to their normal condition, so
that they can perform their usual functions. Whether the com-
pany did what the law required of it was properly left to the
jury upon the facts, and under the rule of the ordinarily pru-
dent man, though the charge did not deal with the details of
the evidence as it should have done. The failure to notify the
sender that it could not deliver the message was also evidence
of negligence, but it was error to instruct the jury it was not
only negligence, but if it was found that the service message
was not sent, they should answer the first issue "Yes," because

that issue involved not only negligence, but proximate cause, as it was submitted. The issue was not so framed as to present literally the question of proximate cause, but it was so treated by the court, as judgment was given upon the verdict, and there is no other issue as to this act of negligence and its proximate results. The instruction simply misled the jury. Again, the court should have required the jury to find whether the service message could have been delivered to the sender at Pineville, and, if so, whether he not only could, but would, have used the telephone for the purpose of sending the message to his brother in time for him to attend the funeral. Mere negligence is not actionable, and it does not become so unless it proximately causes damage. The precise question was decided in *Hauser v. Telegraph Co.,* 150 N. C., at p. 558: "The burden of proof was not upon the defendant to show that the plaintiff had not exercised diligence, but upon the plaintiff to show, not only that the defendant had been guilty of negligence, but that its negligence was the proximate cause of the damage to him. *Hocutt v. Telegraph Co.,* 147 N. C., 186. It is not enough to show that there has been negligence in order to entitle a plaintiff to recover; he must, in addition, show that the defendant's negligence was the proximate cause of his injury. Negligence is not actionable unless it is the proximate cause of the damage. *Brewster v. Elizabeth City,* 137 N. C., 392. The burden is always upon the plaintiff to prove every requisite of his cause of action. This is not a question of contributory negligence which would shift the burden of proof to the defendant, but it is one of the essential elements of the cause of action that the negligence of the defendant should proximately cause the damage." The second issue evidently referred to the original message and its prompt transmission over the defendant's wires and its delivery to T. L. Hoaglin at Granite Quarry, and not to the service message. The error of the court in thus instructing the jury requires us to order a new trial, as we are unable to determine whether the answer to the first issue was given under the charge as to the duty of defendant to repair its wire with reasonable care and diligence or under the erroneous instruction. If we could separate the two because we knew with

certainty that the jury were not influenced by the error, we would do so, but it is impossible, as the correct and incorrect instructions have together passed into the verdict, which is indivisible. In such a case, a new trial is the only remedy for the error. *Rowe v. Lumber Co.,* 133 N. C., 433, and cases cited; *Dunn v. Currie,* 141 N. C., 126. It is analogous to the principle decided in *Williams v. Haid,* 118 N. C., 481; *Tillett v. R. R.,* 115 N. C., 662; *Edwards v. R. R.,* 132 N. C., 99; *S. v. Barrett,* 132 N. C., 1005, and more recently in *Patterson v. Nichols,* 157 N. C., at p. 413. The issues should be amended so as to embrace the questions arising upon the second act of negligence imputed to the defendant, one of which will be, whether the failure to notify the sender of the true situation was the proximate cause of the damage to the plaintiffs, and this, in its turn, will involve the question whether a service message could have been delivered within the free delivery limits, if any, at Pineville, and if none, then within the limits of the town, that being the place from which the original message was sent; and the further question, whether S. G. Hoaglin would have used the telephone, if he had received the service message in time to do so, and he could thus have communicated with his brother at Granite Quarry in time for the latter to have attended the funeral. It will be better to present the questions as to the two acts of negligence in separate issues, for the jury may find that defendant did not mend its wire with due diligence, and that, if it had done so, the message would have reached T. L. Hoaglin in time for him to have gone to Pineville and attended the funeral.

There was evidence to support a finding for plaintiff on all these questions, but the facts must be found by the jury, and, at the next trial, the defendant may explain away its apparent default and fully acquit itself of the charge of negligence, and plaintiffs may strengthen some links in their case which will present it with greater clearness and conclusiveness to the jury and so as to satisfy them that the defendant's apparent negligence is very real and has been the legal cause of damage to them.

New trial.