These two actions were brought to recover damages for negligently failing to transmit and deliver a telegraphic message sent by the plaintiff, S.D. Hoaglin, from Pineville, N.C. to his brother, the other plaintiff, who was at Granite Quarry, N.C. The two cases were consolidated by consent of the parties, and tried together, as they involved substantially the same questions of fact and law. The jury returned the following verdict:
1. Was the defendant guilty of negligent delay in the transmission and delivery of the message sued on, as alleged in the complaint? (392) Answer: Yes. *Page 319 
2. If the telegram had been delivered promptly, could and would T. L. Hoaglin have attended the funeral of plaintiffs' mother, alleged in the complaint? Answer: Yes.
3. What damages, if any, is the plaintiff T. L. Hoaglin entitled to recover of the defendant for mental anguish caused by said negligent delay in the transmission and delivery of the said message? Answer: Five hundred dollars.
4. What damages, if any, is the plaintiff S.D. Hoaglin entitled to recover of the defendant for mental anguish caused by said negligent delay in the transmission and delivery of the said message? Answer: Two hundred and fifty dollars.
Judgment was entered thereon, and defendant appealed.
The evidence tended to show these facts: Plaintiff S.D. Hoaglin, whose mother had died about 12 o'clock m. on Saturday, 3 June, 1911, sent the following message at 5:15 p. m. to his brother, T. L. Hoaglin:
T. L. HOAGLIN, Granite Quarry, N.C.
 Mother died today. Bury tomorrow at 10 o'clock. Come. S.D. HOAGLIN.
The message was filed with the defendant at Pineville, N.C. which is 10 miles south of Charlotte, N.C. on 3 June, 1911, at 5:15 p. m.; it was received at Charlotte, at 5:30 p. m. the same day, the operator in the Charlotte office stating that it was on his hook when he returned to his instrument at 5:30 o'clock. There was but one continuous wire from Charlotte to Granite Quarry. He called the office at the latter place over this wire, and found it was "open," which means that he could not use it, as it was "out of commission," or broken at some place; where, he could not tell. It continued to be "out of order" until the next morning. Trains left Granite Quarry at 8:30 and 10 o'clock p. m. and at 1:30 and 6 o'clock a. m. T. L. Hoaglin stated that he could have walked to Salisbury and taken a train there, and would have done so, had he received the message in time to have reached Pineville before the funeral, the distance from Granite Quarry to Salisbury being only 5 miles. The (393) message was sent to R. E. Mitchell, a train dispatcher at Salisbury, over the wires, for the purpose of having it sent by the conductor of the train at 9:50 a. m., which was Sunday. It was delivered by the conductor to T. L. Hoaglin at Granite Quarry at 10:30 the same morning, but too late for him to attend the funeral, which was then being held. When W. H. Crum, the lineman, who was at or near Thomasville during the afternoon of Saturday, 3 June, 1911, returned to Salisbury, about dusk, on No. 35, he was told by Mitchell of the break *Page 320 
in the wire to Granite Quarry, but as it was dark he did not go to the place of the break that night, although he had a railroad velocipede, but waited until next morning, when he went on his velocipede in seal of the break in the wire, and found it about 41 1/2 miles from Salisbury and in sight of Granite Quarry, that is, about one half mile from that place. A heavy electrical and wind storm had passed over that section about 4 o'clock p. m. on Saturday, 3 June, and it had blown a tree down, which fell across the wire. Crum pulled the wire from under the t: and spliced and replaced it on the pole. This was about 10 o'clock Sunday morning. There was another lineman at Salisbury, but it does not appear why he was not called upon to repair the broken wire. There was I; telephone line connecting Pineville with Granite Quarry, and it appeared that neither the Charlotte nor the Salisbury operator notified the sender, by a service message, that his telegram could not be deliver S.D. Hoaglin testified that he could have used the telephone had he been notified by the defendant of the failure to deliver his message.
The defendant requested the court to give the following instructions, which were modified, as will appear, and defendant excepted to this modification:
1. If the jury find from the evidence and by the greater weight thereof that on the 3d day of June, 1911, at about 4:25 o'clock p. m., the wire of the defendant between Salisbury and Granite Quarry was broken or disconnected by a tree falling across it on account of a wind or electric storm, and that the said interruption continued until after 10 o'clock of the morning of 4 June, 1911, and that the only wire reaching from (394) Charlotte to Granite Quarry available to the use of the defendant was the said wire, which was broken or interfered with by the said electric storm, and that the said interference or breaking of the said wire by the said storm was the cause of the defendant not deliver the message referred to in the complaint in this action, then the jury are instructed to answer the first issue "No."
The court refused to give the foregoing instruction, as prayed by the defendant, but added to the same the following: "Provided you find that the defendant could not, by the exercise of reasonable care and due diligence, have transmitted and delivered the message to T. L. Hoaglin, notwithstanding the storm."
2. If the jury find from the greater weight of the evidence that a tree fell across and broke the defendant's wires about 4:25 p. m. on 3 June, by reason of a storm, and that the defendant, with due diligence, removed the tree and reconnected the wires, and that the defendant's delay in delivering the message was caused by said tree being blown on the wires by a storm, the jury are instructed to answer the first issue "No." *Page 321 
The court refused to give the foregoing prayer, but added thereto the following: "Provided you find that the defendant could not, by the exercise of reasonable care and due diligence, have transmitted and delivered the message to T. L. Hoaglin, notwithstanding said storm breaking its said line."
The court, among other instructions, charged the jury as follows: "If you find from the evidence in this case that the defendant could not, on account of its wire between Salisbury and Granite Quarry being down, deliver the message to the sendee, T. L. Hoaglin, then it was the duty of the defendants, the telegraph company, to use reasonable diligence to notify the sender, S.D. Hoaglin, and if it failed to do so, then the defendant was negligent, and you will answer the first issue `Yes.'"
Defendant excepted to this instruction, and now assigns it as error.
After stating the case: There was error in the last (395) instruction given by the court, but not in telling the jury that, when the defendant discovered it could not send this the message over its wire from Charlotte, it was its duty to notify the sender at Pineville of the fact, for that is correct. Hendricks v. Telegraph Co.,126 N.C. 304; Cogdell v. Telegraph Co., 135 N.C. 431; Hood v. TelegraphCo., 135 N.C. 622. The defendant's failure to notify the sender of its inability to deliver the message was evidence of negligence. Hood v.Telegraph Co., supra; Cogdell v. Telegraph Co., supra; Cogdell v. TelegraphCo., 135 N.C. 431; Woods v. Telegraph Co., 148 N.C. 1. It having been shown that the message had not been delivered, a prima facie case of negligence was made out, as was decided in the cases we have just cited. The Court said in Hendricks Telegraph Co., supra: "It is well settled that where a telegraph company receives a message for delivery and fails to deliver it with reasonable diligence, it becomes prima facie liable, and that the burden rests upon it of alleging and proving such facts as it relies upon to excuse its failure." This very language was repeated inCogdell v. Telegraph Co., supra. See, also, Laudie v. Telegraph Co.,126 N.C. 431; Hunter v. Telegraph Co., 130 N.C. 602; Rosser v. TelegraphCo., 130 N.C. 251. This was not controverted, as we understand, by the defendant, and it undertook to explain its apparent gross neglect of duty. Whether it succeeded in doing so was for the jury, and so far as the duty resting upon it to repair the break in its wire from Charlotte to Granite Quarry is concerned, the charge of the judge was more than favorable to it, not so much in respect *Page 322 
of what he did say on that branch of the case as in respect of what he did not say. It appears, from R. E. Mitchell's testimony, that there was a violent storm at 4 o'clock in the afternoon of Saturday, 3 June, 1911, and that the wire to Granite Quarry went down at 4:25 o'clock, so that at least sixteen hours elapsed after the break in the wire before there was any attempt made to mend it. The witness W. H. Crum, who was a lineman, did not return to Salisbury until dusk, but why he was not earlier called in to make the needed repairs and why he did not use his velocipede that night with a lantern, the trains having stopped (396) running for the night, does not clearly appear. Nor does it appear why the other lineman at Salisbury was not called upon to do the work. It seems to have been a very simple operation, and the break in the line was easily discoverable, according to Crum, as the tree was lying on the wires very near the track, and could not easily have escaped the attention of a lineman on the car with a light, even in the nighttime, and especially of a man who was keeping a watchful lookout for it. Why the defendant failed to send a service message, notifying the sender of the accident to its line, is not explained. The fact that S.D. Hoaglin lived 2 miles from Pineville, if he did, was no excuse for not sending the message to the office at Pineville, so that if the sendee was there, he could be notified. The operator at Charlotte knew that the wire was open as early 5:35 o'clock, Saturday afternoon, just twenty, or at the most, thirty minutes after it had been filed at Pineville. It does not follow that S.D. Hoaglin was not in Pineville at that time: simply because he lived 2 miles from the town. 37 Cyc., 1678. It was said in Rosser v. Telegraph Co.,130 N.C. 255: "The message having been shown by the testimony, and also admitted in the answer, to have been received by defendant and the charges prepaid, it then became its duty to deliver it to the addressee at the point to which it was addressed. If, however, that could not be done, then it was incumbent upon defendant to show that it had performed its part of the contract by exercising due diligence in endeavoring to do so. The fact that plaintiff lived several miles from West End does not excuse the defendant from making prompt and diligent inquiry to see if he were not within its delivery limits at that point when the message arrived." It is natural to suppose that Hoaglin may have been in Pineville, awaiting an answer from his brother, as, with due care oat the part of the defendant, it required a very short time for such a reply to reach him. We do this think, though, that defendant was required to deliver the service message to him beyond the corporate limits of Pineville, or beyond its free delivery limits there, if it has any. R. R. v. Stroud, 82 Ark. 117;Telegraph Co. v. Davis., 71 S.W. 313; Telegraph Co. v. Matthews, *Page 323 113 Ky., 188; McCaul v. Telegraph Co., 114 Tenn. 661. It did not know when it received the message for transmission and delivery (397) to T. L. Hoaglin that its line was not in condition for use, and it could not well have anticipated the storm or what its effect would be on the efficiency of its service. It was in no default up to the time that H. J. Hale, its operator at Charlotte, returned to the office and tested the wires and found the one to Granite Quarry open. It is a little surprising, without explanation, that the chief night operator of a large office like the one in Charlotte, who is supposed to be careful, and who, at least, should be, failed at the opportune moment to notify the sender of the situation he had discovered. There is no satisfactory explanation of his conduct in this record. But while the fact that the message was not transmitted and delivered is prima facie evidence of negligence, the presumption thus raised may be rebutted by evidence showing that the company exercised due care or was prevented from making delivery by causes over which it had no control. 37 Cyc., 1673; Fowler v. Telegraph Co., 80 Me. 381. It does not insure prompt transmission, and could not justly be required to do so, and is liable only for negligence. It follows that it is not responsible for delays due to unavoidable interruptions in the working of its lines, such as those resulting from storms or atmospheric disturbances, or any other causes over which it has no control and against which, in the exercise of ordinary prudence and foresight, it was not reasonably practicable to guard. It must, though, by the exercise of due care, provide against all preventable causes. If its wires are injured by a storm, it must make diligent effort to remove the obstruction and restore them to their normal condition, so that they can perform their usual functions. Whether the company did what the law required of it was properly left to the jury upon the facts, and under the rule of the ordinarily prudent man, though the charge did not deal with the details of the evidence as it should have done. The failure to notify the sender that it could not deliver the message was also evidence of negligence, but it was error to instruct the jury it was not only negligence, but if it was found that the service message was not sent, they should answer the first issue "Yes," because that issue involved not only negligence, but proximate cause, as it was submitted. The issue was not (398) so framed as to present literally the question of proximate cause, but it was so treated by the court, as judgment was given upon the verdict, and there is no other issue as to this act of negligence and its proximate results. The instruction simply misled the jury. Again, the court should have required the jury to find whether the service message could have been delivered to the sender at Pineville, and, if so, whether he not only could, but would, have used the telephone for the purpose *Page 324 
of sending the message to his brother in time for him to attend the funeral. Mere negligence is not actionable, and it does not become so unless it proximately causes damage. The precise question was decided in Hauser v.Telegraph Co., 150 N.C. at p. 558: "The burden of proof was not upon the defendant to show that the plaintiff had not exercised diligence, but upon the plaintiff to show, not only that the defendant had been guilty of negligence, but that its negligence was the proximate cause of the damage to him. Hocutt v. Telegraph Co., 147 N.C. 186. It is not enough to show that there has been negligence in order to entitle a plaintiff to recover; he must, in addition, show that the defendant's negligence was the proximate cause of his injury. Negligence is not actionable unless it is the proximate cause of the damage. Brewster v. Elizabeth City, 137 N.C. 392. The burden is always upon the plaintiff to prove every requisite of his cause of action. This is not a question of contributory negligence which would shift the burden of proof to the defendant, but it is one of the essential elements of the cause of action that the negligence of the defendant should proximately cause the damage." The second issue evidently referred to the original message and its prompt transmission over the defendant's wires and delivery to T. L. Hoaglin at Granite Quarry, and not to the service message. The error of the court in thus instructing the jury requires us to order a new trial, as we are unable to determine whether answer to the first issue was given under the charge as to the duty of defendant to repair its wire with reasonable care and diligence or under the erroneous instruction. If we could separate the two because we knew with certainty that the jury were not influenced by error, we would do so, but it is impossible, as the (399) correct and incorrect instructions have together passed into the verdict, which is indivisible. In such a case, a new trial is the only remedy for the error. Rowe v. Lumber Co., 133 N.C. 433, and cases cited;Dunn v. Currie, 141 N.C. 126. It is analogous to the principle decided inWilliams v. Haid, 118 N.C. 481; Tillett v. R. R., 115 N.C. 662; Edwardsv. R. R., 132 N.C. 99; S. v. Barrett, 132 N.C. 1005, and more recently in Patterson v. Nichols, 157 N.C. at p. 413. The issues should be amended so as to embrace the questions arising upon the second act of negligence imputed to the defendant, one of which will be, whether the failure to notify the sender of the true situation was the proximate cause of the damage to the plaintiffs, and this, in its turn, will involve the question whether a service message could have been delivered within the free delivery limits, if any, at Pineville, and if none, tags within the limits of the town, that being the place from which the original message was sent; and the further question, whether S. G. Hoaglin *Page 325 
would have used the telephone, if he had received the service message in time to do so, and he could thus have communicated with his brother at Granite Quarry in time for the latter to have attended the funeral. It will be better to present the questions as to the two acts of negligence in separate issues, for the jury may find that defendant did not mend its wire with due diligence, and that, if it had done so, the message would have reached T. L. Hoaglin in time for him to have gone to Pineville and attended the funeral.
There was evidence to support a finding for plaintiff on all these questions, but the facts must be found by the jury, and, at the next trial, the defendant may explain away its apparent default and fully acquit itself of the charge of negligence, and plaintiffs may strengthen some links in their case which will present it with greater clearness and conclusiveness to the jury and so as to satisfy them that the defendant's apparent negligence is very real and has been the legal cause of damage to them.
New trial.
Cited: Ellison v. Tel. Co., 163 N.C. 11, 13; Alexander v. Statesville,165 N.C. 532; Betts v. Tel. Co., 167 N.C. 80; Medlin v. Tel. Co.,169 N.C. 505, 506; Champion v. Daniel, 170 N.C. 3; Howard v. Telegraph Co.,ib., 499; Johnson v. Tel. Co., 171 N.C. 132.
(400)