This is an appeal by the defendants from a judgment rendered against them in the plaintiff's favor at the October Term, 1917, of the Superior Court of Mecklenburg County. The action arose (461) out of a collision between one of the defendant's street cars and the plaintiff's buggy, upon North Tryon Street, in the city of Charlotte, and was submitted to the jury upon issues which, with the answers thereto, were as follows: *Page 490 
1. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint? Answer: "Yes."
2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: "Yes."
3. Notwithstanding the negligence of the plaintiff, could the defendants, by the exercise of ordinary care, have prevented the injury? Answer: "Yes."
4. What amount of damages, if any, is the plaintiff entitled to recover of the defendants? Answer: "$1,250."
The plaintiff contended, and in his own behalf testified, that he drove his horse and buggy out of an alleyway adjoining the city hall straight across North Tryon Street, intending to go on the west side thereof, and turn to his left and go up the Square; that when his horse's head was within about 20 feet of the street car track he looked south and saw a car coming toward him about 100 or 125 feet away; that he was driving five or six miles an hour and thought he had time to get across the track ahead of the car; that when he first saw the car its speed was about fifteen miles an hour, and that it kept coming without checking its speed, probably getting a little faster, and that before he could clear the track with his buggy the left corner of the fender struck the rim of his left hind wheel that his horse took fright and either the jar or the jumping of the horse caused the traces to break and the horse to run away, the horse running down the street about 175 feet from the point of the collision, where, as the result of holding on to the lines after the harness had been broken, he was pulled over the dashboard, got his leg caught in the front wheel of the buggy and broken.
The defendant contended and its witnesses testified that at the time the car had just left the Square and was running very slowly, five or six miles an hour; that the plaintiff drove out of the alleyway and instead of crossing the street and getting on the righthand side, as required by ordinance, came up towards the Square on the left-hand side for a distance and then started to drive diagonally across the street, meeting the car; that as soon as the motorman saw plaintiff start across the track, and while he was some feet from the track, he sounded his gong to warn the plaintiff, but that instead of stopping or going straight across the track the plaintiff continued to drive diagonally across the street toward the car and commenced slapping the horse with the lines to quicken his speed; that the motorman immediately reversed his car and stopped it; that after the car stopped plaintiff (462) still continued in his course diagonally across the track, and ran across the fender, pressing it down and causing it to fly up and catch the rim of the hindwheel; that the plaintiff's conduct in *Page 491 
driving his horse, which was an old fire horse, against the fender while at the same time slapping him with the reins caused the horse to take fright and run away and break the harness, and that the plaintiff, by continuing to hold to the lines after the harness was broken, was finally pulled over the dashboard, getting his leg caught in the wheel and broken.
The court charged the jury upon the first and third issues substantially as follows:
If you find by the greater weight of the evidence that it reasonably appeared to the motorman, or that he saw or could have seen by the exercise of ordinary care, that plaintiff was crossing the track and that there would be a collision, or that he was going to strike the buggy before the plaintiff could cross the track, then the court charges you that the defendant company owned a duty to the plaintiff to slow down its car; and if you find that it reasonably appeared to the motorman that he was going to have a collision with the plaintiff, striking his buggy before he cleared the track (the court charges you that it was the duty of the motorman to reverse his car and stop before he struck this man, if he could do it without danger to his passengers; and if he failed to do that, the court charges you that he would be guilty of negligence, and it would be your duty to answer the first issues "Yes.")
"If you find by greater weight of the evidence that he saw this man on the track or could have seen him by the exercise of ordinary care and prudence, and find by the greater weight of evidence that it reasonably appeared to the motorman that the plaintiff was in a perilous condition, the court charges you that it was the duty of the motorman to stop his car and avert the injury, (and if he did not do it, the court charges you that it would be your duty to answer the third issue `Yes.'")
There were other exceptions, but they need not be stated, as the opinion is confined to those already set forth.
Judgment was entered on the verdict for the plaintiff, and defendant appealed.
after stating the case: We are of the opinion that the two instructions given to the jury, and to which exceptions were taken, are erroneous — not so much because of what was said, but because of what was omitted. Generally speaking, negligence is the absence of that care which under the circumstances should be exercised, (463) gauged by the rule of the ordinarily prudent man. The court *Page 492 
charged, in effect, and in the first of the instructions, that it was the absolute duty of the motorman "to reverse his car and stop before he struck the vehicle," and in the other that it was his duty "to stop the car and avert the injury," and in both instructions that if he failed in the respects mentioned it was negligence, and they should answer the issues "Yes." It was, perhaps, his duty, under the circumstances stated, to stop the car, but not so unless it could be done by the exercise of ordinary care. There was no legal duty to do it, if it could not be done, for instance, if he had not sufficient time to do it, but it was his duty to stop it if that could be done in the exercise of proper care. The court charged that the mere act of failing to stop was negligence, whereas the instruction should have been that there must have been a negligent failure in that respect before the jury could give an affirmative answer to the issues.
But there is more serious objection to the instruction, as we think. The court failed to tell the jury that the negligence of defendants must have been the proximate cause of the injury in order to be actionable, so that the issue could be answered "Yes."
In order to establish actionable negligence, the plaintiff is required to show by the greater weight of the testimony, first, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed, proper care being that degree of care which a prudent man should like circumstances and charged with a like duty; and second, that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it could have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under the facts as they existed. Ramsbottom v. R. R., 138 N.C. 51.
In the case just cited the plaintiff's horses were running along the railroad track ahead of an approaching train, and while so doing ran onto a trestle and were injured. The negligence alleged against the defendant was the failure of the engineer to stop the train before the horses ran onto the trestle. The trial court charged that "If the engineer of ordinary prudence and care could by reasonable diligence have seen that the horses were badly frightened and were rushing forward toward the trestle, then it was the engineer's duty to stop the engine. And if you find the further facts to be that the horses were driven onto the trestle by the approaching train and its failure to stop sooner than it did after passing the crossing, it is negligence on the part of the *Page 493 
defendant, and you will answer the first issue `Yes'." This Court held this instruction to be erroneous on the identical ground (464) now urged by the defendants, and certainly the instruction in the case at bar is, at least as erroneous as the one there given. It is strictly analogous to it, and the two are almost literally the same.
It may be well to refer to several of the cases in which we have held that negligence and proximate cause must concur in order to make the former actionable, as it may emphasize the necessity of uniting the two when juries are instructed upon this question, which is of such frequent occurrence. "To constitute contributory negligence, the plaintiff must have committed a negligent act, and such negligent conduct must have been the proximate cause of the injury. The two must concur and be proved by the defendant by the clear weight of evidence. A failure to establish proximate cause, although negligence be proved, is fatal to the plea." Brewster v.Elizabeth City, 137 N.C. 394.
"It is not enough to show that there has been negligence in order to entitle a plaintiff to recover; he must, in addition, show that the defendant's negligence was the proximate cause of his injury. Negligence is not actionable unless it is the proximate cause of the damage." Hoaglin v.Telegraph Co., 161 N.C. 398.
"It is generally held, and this we regard as the true doctrine, that the element of proximate cause must be established, and it will not necessarily be presumed from the fact that a city ordinance or statute has been violated. Negligence, no matter in what it may consist, cannot result in a right of action unless it is the proximate cause of the injury complained of by the plaintiff." Henderson v. Traction Co., 132 N.C. 785, quoting Elliott on Railroads, sec. 711.
"In all courts where the common law is administered it is held that one cannot recover damages upon proof of negligence alone, and that he must proceed further and show that the negligence of which he complains was the real proximate cause of the injury." Pritchett v. R. R., 157 N.C. 101.
In Paul v. R. R., 170 N.C. 230, it was held that negligence, to be actionable, must be the proximate cause of the injury for which damages are sought, and ordinarily the question as to the proximate cause of an injury arises from the evidence, as an issue of fact for the jury, under proper instructions, and not solely as a matter of law. It was there said: "Much of the difficulty in the application of the doctrine of proximate cause arises from the effort on the part of the courts to give legal definition to what is essentially a fact, and in most cases, for the determination of a jury."
And the Court said in Kellogg v. R. R., 94 U.S. 469: "The true rule is that what is the proximate cause of an injury is ordinarily a *Page 494 
question for the jury. It is not a question of science or of legal (465) knowledge. It is to be determined as a fact in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement or, as is the oft cited case of the squib thrown in the market place. 2 Bl. Rep., 892. The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation?"
This case was approved in Hardy v. Lumber Co., 160 N.C. 113, in which it was said, citing Cooley on Torts (Ed. 1879), p. 69: "When the act or omission complained of is not in itself a distinct wrong, and can only become wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown, but it must be so connected by avertment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events and as a proximate result of a sufficient cause." See, further,Davis v. Traction Co., 141 N.C. 134; Wright v. Manufacturing Co.,147 N.C. 534; R. R. v. Jones, 146 Ala. 277, and especially Wheeler v.Gibbon, 126 N.C. 811.
It may further be said that the first and third issues necessarily involve the element of proximate cause by reason of the words in which they are expressed. The inquiry in each is not only whether defendant was negligent, but whether that negligence, if it existed, was the proximate cause of the injury, so that negligence constituted only one-half of the inquiry. McNeill v. R. R., 167 N.C. 390; Crenshaw v. R. R., 144 N.C. 314;Pritchard v. R. R., 157 N.C. 101.
The rule is not disputed, but we again advert to it and the authorities sustaining it, so that there may be a clear understanding of it, and of the necessity for applying it to instructions as to negligence. The learned counsel, contends, in his brief, that the charge should be construed as a whole and there is sufficient in it to cure the error, but we do not think this is a case of that kind, admitting, as we do, that it can be corrected in that way. There is only a definition of negligence and proximate cause separately stated in the beginning of the charge, and no general or particular explanation of the relation of the one to the other, or the legal connection between the two — nothing by which the jury could know how to supply the fatal omission in the instruction. The error was, therefore, not removed by anything the judge said elsewhere in his charge, not even by a liberal construction of it.
New trial. *Page 495 
 Cited: Hinnant v. Power Co., 187 N.C. 296; Campbell v. Laundry,190 N.C. 654; DeLaney v. Henderson-Gilmer Co., 192 N.C. 650; Clinard v.Electric Co., 192 N.C. 741; Ellis v. Power Co., 193 N.C. 361; Lancaster v.Coach Line, 198 N.C. 108; Poplin v. Adickes, 203 N.C. 727; Bechtler v.Bracken, 218 N.C. 524; Price v. Gray, 246 N.C. 168.
(466)