## SMITH v. UNITED STATES.
### Civ. No. 622.

United States District Court
W. D. North Carolina, Charlotte Division.
Jan. 19, 1951.

Guy T. Carswell, Hunter M. Jones, and Carl Horn, Jr., all of Charlotte, N. C., for plaintiff.

T. A. Uzzell, Jr., U. S. Atty., Asheville, N. C., and J. B. Craven, Jr., Asst. U. S. Atty., Morganton, N. C., for defendant.

WARLICK, District Judge.

This is an action for personal injury and property damage arising under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2401 (b), and 2671–2680. The case was heard in Charlotte and came on for decision on the pleadings and the evidence offered. The action is one which arises from the collision of two automobiles, one operated by the plaintiff and the other by an admitted agent of the Government. The evidence heard was conflicting to the extent that an actual determination of it is rather difficult,—the facts as found represent a diligent and precise study based on the evidence heard and the exhibits offered. These findings of fact are grouped below.

1. The plaintiff, on the afternoon of November 12, 1947, was operating a 1941

model Chevrolet automobile, the property of another, on the Hickory Grove Road, a state highway, travelling toward the intersection of that highway and United States Highway # 27, more generally referred to as the "Charlotte-Albemarle highway", with the purpose in mind of crossing over said United States Highway # 27 and continuing southwardly. United States Highway # 27 is a 24 ft. roadway, constructed of concrete.

2. The Hickory Grove Road is approximately 18–20 ft. wide and is paved with a tar and gravel process. It was classified in the North Carolina highway system as a secondary roadway, in that pursuant to Section 20-158 the State Highway and Public Works Commission had designated United States Highway # 27 as a main travelled highway and had erected at the entrance thereto from the Hickory Grove Road a STOP sign notifying drivers of vehicles to come to a full stop before entering or crossing said United States Highway # 27. That the Hickory Grove Road widened out in its intersection with Highway # 27 and the actual point of intersection was much wider than the roadway proper in that the widening on both sides was so affected as to accommodate traffic on the turns either made into or out of said Hickory Grove Road.

3. That prior to the time of the collision alleged in the complaint, there had been erected by some private owner a large billboard approximately 16 x 18 ft. on the left side of the Hickory Grove Road which in a sense and after a fashion would obscure and obstruct a proper view until and after said billboard had been passed and that between the edge of United States Highway # 27 and the billboard above mentioned, there had been erected by the State Highway authority a smaller sign containing information as to the distances to some three or more places in North Carolina.

4. The plaintiff, in approaching United States Highway # 27 operated his automobile to the left of the center of said Hickory Grove Road on which he was travelling, and approached and travelled up to and on Highway # 27 far to the left of the center of said approach, as is prohibited by G.S. § 20-153.

5. At such time above spoken of, when the plaintiff was approaching Highway # 27, an automobile owned by the defendant and in the possession of one Lt. Robert H. Tyer, an officer of the government of the United States, was being driven on United States Highway # 27 from Albemarle toward Charlotte, on a lawful mission. When approximately 150 ft. of the intersection herein, Lt. Tyer became aware of the automobile of the plaintiff and its apparent entrance into Highway # 27, and applied his brakes well nigh instantly, on observing it and after going the intervening distance, collided in the intersection with the automobile of the plaintiff. At the time of actual collision, the automobile of the defendant was travelling at approximately 15 to 20 miles an hour.

6. When Lt. Tyer first observed the plaintiff's car he was travelling at the rate of 45–50 miles per hour, possibly less, probably more, and applying his brakes, undertook to stop when he observed the plaintiff's automobile, making skid marks on the roadway for approximately 70 ft., some skid marks being of a denser color than the others. All of these skid marks on the roadway were made on the right side of the center line of the said highway.

7. United States Highway # 27 is a heavily travelled roadway and at the time of the collision of the two cars herein automobiles were proceeding on said highway in either direction. When plaintiff entered into United States Highway # 27 and observed the approach of the car of the defendant and likely the approach of another or other cars from the west, he turned his car toward the east, directly in front of the approaching car belonging to the defendant, and being driven by Lt. Tyer, and at the time of the collision, the automobile of the plaintiff was entirely on the right hand side of the roadway as was being used by the defendant's car.

8. Shortly after the collision, in consequence of a phone call made by Lt. Tyer, two members of the Mecklenburg County Patrol came upon the scene and at a time

when the automobiles involved herein were in the same position as they were immediately following the wreck, and made a minute and careful examination of the facts and circumstances.

9. Plaintiff admits that his automobile was three feet out in United States Highway # 27, but after the impact the left front wheel of the plaintiff's car facing in the direction of Albemarle was 2½ ft. on the pavement and the left rear wheel was some four to five inches on the pavement. The right front wheel was approximately on the center line and the right rear wheel was approximately 2 ft. from the center line, indicating that the whole of plaintiff's car was on United States Highway # 27 at the time of the collision. That immediately to the rear of the plaintiff's automobile were skid marks for approximately three to four feet.

10. The day was clear, the sun was shining, and the roadway was dry.

11. Undoubtedly the plaintiff, if he stopped, obedient to the sign erected, failed to see and observe the condition of the roadway and when he entered the highway and saw the oncoming car of the defendant approaching said intersection, was unable to stop his automobile and drove out into the face of the oncoming vehicle,— or being of the opinion that he could cross in front of the oncoming vehicle, undertook so to do, and then observed vehicles coming from the opposite direction or from his right, and sensing that he did not have sufficient time to cross in front of them, cut to the left in the face of the defendant's oncoming car and brought about the collision herein.

I conclude as a matter of law that the defendant is not liable to the plaintiff in this case and that he should be denied a recovery for his injury received and the damage sustained.

■ To recover under the Federal Claims Tort Act as its provisions indicate, plaintiff must prove that his injuries were due to negligence by an agent of the United States, acting within the scope of his agency, or employment, under circumstances where the United States. if a private person would be liable to the claimant in the same manner and to the same· extent in accordance with the law of the state in which the injury was suffered.

■ This case, under the North Carolina law, would be tried on the issues of negligence, contributory· negligence, and damage, for that the plaintiff alleges his injuries to have come about by the negligence of the defendant. The defendant in due time denies such negligence and alleges contributory negligence on the part of the plaintiff and denies the damage sought to be recovered.

The defendant admits that Lt. Tyer was its agent acting as such under his commission as an officer in the United States Army, and that such acts on his part as were involved in the operation of the car on this particular afternoon were in the scope of his employment. This leaves for us as a matter to be determined only the question of negligence.

I listened to the evidence most carefully during the approximately two days consumed in the trial, and came to the conclusion that the plaintiff was not injured by the negligence of the defendant.

It is rather inconceivable to me that on a clear day and driving on a dry roadway and with an unobstructed view, as appears from the evidence given by the witnesses, and particularly after the sign had been passed, that one aware of the great amount of travel on Highway # 27 would drive out into said highway without having observed to a certainty that there was no travel thereon which would interfere with his entrance on said highway and permit his crossing in safety, particularly since the plaintiff had his place of business adjacent to the highway and was entirely familiar with the conditions surrounding the whole of the area.

■ If one would assume that the automobile of the defendant was being operated too rapidly or in violation of the speed regulations of North Carolina in force and effect as of the date of the collision, still it could hardly be said that the rate of speed would have been the proximate cause of the alleged injury of

684

the plaintiff or the damage to his property. Undoubtedly, the cause of plaintiff's injury is predicated upon his driving out from a secondary roadway into the highway into the face of oncoming traffic.

In North Carolina before a jury would be justified in answering the issue as to negligence in favor of the plaintiff, or the court in finding facts could so answer it, the rule is that the plaintiff must establish by the greater weight of the testimony that he was injured and his property damaged and that the defendant was negligent, and that that negligence was the proximate cause of the injury and damage suffered and sustained by the plaintiff, that is the nearest or direct cause, or the cause without which his injury and damage would not have been suffered and sustained.

Negligence is a failure to exercise that care which a reasonably prudent person would exercise under the same or similar circumstances.

Stated otherwise, "In order to establish actionable negligence, the plaintiff is required to show by the greater weight of the testimony, first, that there has been a failure to· exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed, proper care being that degree of care which a prudent man should use under like circumstances and charged with a like duty; and second, that such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence and without which it could not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under the facts as they existed. Ramsbottom v. Atlantic Coast Line R. Co., 138 N.C. 38, 41, 50 S.E. 448; Lea v. Southern Public Utilities Co., 175 N.C. 459, 463, 95 S.E. 894; DeLaney v. Henderson-Gilmer Co., 192 N.C. 647, 135 S.E. 791.

It is likewise further the omission to do something which a reasonable man would do, or, doing something which a provident and reasonable man would not do.

Under these rules, any injury suffered and sustained by plaintiff was likely if not proximately brought about by his own failure to properly observe the conditions of the United States Highway # 27 as he entered it, and was not primarily effected by the car of the defendant driven by Lt. Tyer.

I conclude therefore, for the reasons above that the plaintiff is not entitled to recover and do so by answering "No" to the issue set down: "Was plaintiff injured and his property damaged by the negligence of the defendant, as is alleged in the complaint?"

Judgment carrying this into effect to be submitted.